Robert E. Crawford, Plaintiff-Appellee, v. Peabody Coal Company, a Corporation, Defendant-Appellant.

Gen. No. 10,383.

Third District.

February 19, 1962.

Hershey & Bliss, of Taylorville, for appellant.

Harold Broverman, of Taylorville, Carl H. Preihs, of Pana, for appellee.

ROETH, PRESIDING JUSTICE.

Suit was brought on an alleged oral contract between plaintiff and defendant, the complaint alleging a contract wherein defendant agreed to pay him $200 per month for life in consideration of the defendant's agreement to remove himself from the roll of defendant's employees and the further consideration of plaintiff refraining from working for any other coal mining company. The jury returned a verdict for the plaintiff upon which the court entered judgment and from which this appeal is perfected by defendant.

Defendant contends that the trial court erred in denying defendant's motion for directed verdict and

its post trial motion for judgment non obstante vere-
dicto and in excluding certain testimony offered by
defendant.

In June of 1946 plaintiff, an employee of the defend-
ant, sustained carbon monoxide poisoning while man-
aging one of defendant's mines. He was unable to
work until September of that year, when he returned
for several days, laying off again until January of
1947. He was paid his regular salary until this latter
date. It appears that he had discussed his inability
to work with one Starks, the district superintendent
of the mine. On December 10, 1946, plaintiff, Starks,
one Oscar Smith, the company doctor and three other
supervisory employees of the defendant were in
Starks' office for the alleged purpose of discussing the
matter of plaintiff's illness. Plaintiff testified that
the following conversation took place, Starks saying:
"Well, gentlemen, I have been to Chicago and I have
a deal here for you." Starks then reached in his desk
drawer and pulled out a letter and held it in his hand.
He never read it. He said to Oscar Smith, who ap-
parently suffered an ailment similar to that of plain-
tiff, "Oscar, we'll grant you $150 a month the rest of
your natural life pension." He then said, "You know
Bob (the plaintiff) makes more money than you do."
He then advised the plaintiff as follows: "Your deal
will be $200 a month the rest of your natural life but
if you go to work for another coal company, your pen-
sion will cease." The following testimony of plaintiff
then appears in the abstract:

> "Q. Did he say anything about you doing any
> other kind of work?
> A. Yeah. He told us if we were able, we could
> do little odd jobs around and it wouldn't inter-
> fere with our pension.
> Q. Now, just to get the record perfectly straight,
> Mr. Crawford, when he made the remark, 'You

are to receive $200 a month', to whom was he addressing those remarks?

A. Whom was he addressing that to?

Q. Yes.

A. He was addressing that to me.

Q. Did you answer him in any way when he told you about this deal?

A. When he told me the deal was $200 a month the rest of my natural life, I said, 'I'll accept it.' And so did Mr. Smith."

This testimony was objected to by the defendant on the ground that all persons present at the conversation except plaintiff were dead.

Plaintiff further testified, and there is nothing to the contrary in the record, that he did not work for another coal company after his retirement from defendant's employment. The payment of $200 continued from January 1, 1947, to December 31, 1954. From that point on to the present time defendant has been paying plaintiff the sum of $29.70 per month under a pension plan negotiated in May of 1958.

The record is clear that the $200 pension was not paid pursuant to any retirement plan set up by the defendant company for the benefit of all supervisory employees, such as plaintiff, nor did plaintiff contribute to any pension plan either prior to or since his retirement. His right to recovery is predicated solely on the purported agreement of December 10, 1946.

Plaintiff's testimony as to the agreement of December 10, 1946, was not substantiated, for as previously noted, all others who were present and participated in the discussion have since died, the last one dying in about 1959. The only other witness who testified in behalf of plaintiff stated he talked briefly to Starks in the spring of 1947 and that Starks told him in substance that plaintiff was on pension. There is no ques-

tion that defendant did in fact make the payments of $200.00 until December 31, 1954.

It is conceded by both of the parties that the sole question to be determined is whether or not a binding contract was created by the conversation of December 10, 1946, and the subsequent acts of the parties. Defendant also raises other questions that we do not consider material in view of our ultimate finding.

It is defendant's contention that the $200.00 pension was not a contract but a gratuity and that the modification of the pension was not a breach of contract. It claims that this was a purely voluntary proposition and created no contractural rights between the parties and further that there was no consideration to support a contract.

It must be first noted that there is nothing in the record to substantiate the theory that this pension was the result of any negotiations or bargaining. While it may be inferred that some discussion was had relating to plaintiff's illness, the testimony relates solely to the conference of December 10, 1946. Plaintiff was ill during this period of time from the effects of an occupational accident. The record is bare of any evidence of his right to remain as an employee despite his health, nor is there anything in the record to establish that he had other rights, statutory or contractual, against the company that he surrendered in bargaining for this pension.

■ ■ In Hughes v. Encyclopaedia Britannica Inc., 1 Ill App2d 514, 117 NE2d 880, the court said:

> "A pension, like any other form of employee benefit, can be bargained for, made the subject of an enforceable contract, given in the form of a gift, or set up in a plan containing provisions which vest the employer with complete discretion to terminate or continue the plan or to grant or withhold accrued pension benefits."

If it is bargained for it becomes an enforceable contract, for somewhere in the bargaining each side gives something. In any event and in every transaction the burden of proving what the consideration for the promise was is on the plaintiff. In the case at bar, if the consideration was as plaintiff contends his retirement from the employment of defendant, this must be shown. The court cannot presume that because plaintiff had a job with the defendant and because defendant kept him employed several months after his illness that plaintiff had the right to retain this status. If he had the right, proof should have been made, for the presumption cannot arise from his being kept on the payroll after contracting the illness nor from the subsequent payments made on retirement.

The law applicable to this case is, as both parties concede, stated in 12 ILP, Contracts, Section 83, wherein it is stated that:

> ". . . anything which is of benefit to one of the parties to a contract or a detriment or disadvantage to the other constitutes a sufficient consideration to support the contract, . . . "

The record shows nothing of benefit passing to the defendant nor a detriment to the plaintiff. Plaintiff alone testified as to the alleged contract and claims the detriment was to follow first, as above stated, his retirement. Yet there is no showing he had a right to or was able to continue his labors for defendant at the time of the contract. Second, his abstaining from seeking other employment. By plaintiff's own admission he could not work for defendant or do any like work at the time of the agreement. This of course is unimportant insofar as the future was concerned, if in fact the contract was as he contends. However, the only evidence in the record of this agreement was Starks' statement, ". . . but if you agree to work for

393

another coal company, your pension will cease." The only interpretation that can be placed on this statement is that it was a condition to plaintiff's continuing to receive the monthly payments. Plaintiff made no effort to show that he was ever capable of or that he even considered working for another coal company and does not now nor did he at the trial contend that defendant was estopped in any manner from refusing to continue such payments.

In 17 ILP, Employment, Section 56, that authority briefly and succinctly sets out what we feel the law to be in this case:

> "The policy of pensioning deserving employees in their old age does not enter into the relationship of employer and employee in the absence of statute except when so provided by the contract of the parties.

> "A pension plan promulgated by the employer, not calling for any contributions by the employee, and specifically declaring that the plan is entirely voluntary on the part of the employer and that no contractual relationship is intended or created between it and its employees, and reserving the right to amend, and change, or discontinue the plan if in its exclusive judgment future conditions warrant such action, does not give rise to contractual relationship with the employee. Under such a plan the pension constitutes a gratuity unenforceable by the employee.

> "Where the benefits under a voluntary pension plan constitute merely gratuities, the employer may condition the bounty in any manner that it deems best as provided in the pension rules and regulations, such as pension rules empowering a board to withhold or terminate a pension allowance with or without cause.

"A contract to pay a pension must be supported by a valid consideration. Accordingly it has been held that services rendered in the past, or appreciation thereof, or a moral consideration, or a requirement that employees report at the office for the purpose of receiving their checks is not a sufficient consideration for a contract to pay employee's pension; and, where an arrangement under which pensions are paid is not supported by a valid consideration, it is revocable at the pleasure of the employer."

■ ■ While it is true there is no evidence to the effect that defendant ever advised plaintiff as to the voluntary nature of the pension and it is equally clear that defendant never advised plaintiff that it retained the right to amend, change or discontinue the pension by unilateral action, these facts nonetheless cannot supplement a voluntary pension plan and make it an enforceable contract. The contract was unenforceable at the time of its execution. We feel that no other conclusion is possible except that which we have set forth. If it is not enforceable at the time of its execution then it may become so only by the subsequent action of the parties. Here there is no evidence to show any acts which by the law would convert this plan into a contract.

For the reasons set forth herein judgment of the Circuit Court of Christian County will be reversed.

Reversed.

REYNOLDS and CARROLL, JJ., concur.