**Marie Bredemann, Appellant, v. Vaughan Mfg. Company, Appellee.**

**Gen. No. 48,827.**

First District, Third Division.
February 13, 1963.

Robert E. Cleveland, of Chicago, for appellant.

Winston, Strawn, Smith & Patterson, of Chicago (Gerard E. Grashorn and Edward J. Wendrow, of counsel), for appellee.

MR. JUSTICE McCORMICK delivered the opinion of the court.

This appeal is taken from a summary judgment entered in the Circuit Court of Cook County in favor of the defendant. The plaintiff, Marie Bredemann, had filed a complaint in two counts against the defendant, Vaughan Mfg. Company. In the first count she seeks damages for the breach of an alleged oral agreement by the defendant corporation to pay her a monthly salary during her lifetime. In the second count she seeks a declaratory judgment, requesting the court to declare the contract in full force and effect for the balance of her life.

It is necessary to set out the pleadings in some detail. Count I of the complaint alleges that the plaintiff was a loyal and trusted employee of defendant corporation for a period of twenty-five years immediately preceding her retirement in December 1954. It is further alleged that as a part of the consideration

for the services rendered to the defendant by her, the defendant, by and through its officers, directors and agents, orally promised to pay her full salary of $375 a month as long as she lived. It is further alleged that the defendant complied with the oral agreement and paid plaintiff her full salary of $375 a month from December 23, 1954 to about June 30, 1957, and that on or about June 30, 1957 the payments were reduced, and in June 1961 the defendant stopped all payments to the plaintiff. The plaintiff further alleges that there is due and owing to her from the defendant $9,000, for which she asks judgment. Count II of the complaint realleges the allegations in count I and states that a controversy now exists between the parties as to the rights of the plaintiff under the said agreement and that the plaintiff desires the court to fix and determine her right to compensation as agreed for the balance of her natural life, and prays for a declaratory judgment.

The defendant filed an answer to both counts of the complaint. In its answer to count I it denies that as part of the consideration the plaintiff rendered, the defendants, through its officers, directors and agents, orally promised to pay her upon her retirement her full salary as long as she lived, and it further denies that the plaintiff is entitled to any judgment against the defendant. Its answer to count II realleges the answer to count I, admits that there is a controversy between the parties, and denies that the plaintiff is entitled to a declaratory judgment against the defendant for any payments in the future to the plaintiff.

The defendant, pursuant to notice, took a discovery deposition of the plaintiff on January 15, 1962.

After the answer was filed, on January 27, 1962 plaintiff filed a notice to take a discovery deposition of John M. Grace, and on February 15, 1962 the plaintiff filed notice to admit facts. In response to that no-

234

tice the defendant in its reply on February 19, 1962 admitted that the plaintiff had been employed by the defendant from 1929 continuously to on or about December 23, 1954, and that at the latter time the plaintiff was receiving a salary of $375 a month; that from December 1954 until on or about June 1, 1957 the defendant paid the plaintiff the same salary each month and that during that period the defendant used the full amounts of the payments as a business deduction in its federal income tax returns filed in those respective years; that the defendant treated the monies paid the plaintiff as monies paid a working employee of the corporation; that the defendant filed no gift tax returns on any of the said monies; and that the defendant deducted withholding taxes from such payments made to the plaintiff during the said period. The defendant states it has no knowledge of any conversations between the plaintiff and Mr. Vaughan or Mr. Grace, in which conversations the interrogatories set out that the plaintiff was told that she would be paid her full salary for the rest of her life.

On February 23, 1962 the defendant filed a motion for summary judgment, and in that motion stated that it is presenting in its support the deposition of the plaintiff which is attached thereto and made a part thereof. The motion for summary judgment was continued to March 30, 1962. On March 26, 1962 the plaintiff filed a notice to take the evidence deposition of John M. Grace, at Hollywood, Florida on written interrogatories. On March 26, 1962 the plaintiff filed a motion to strike the motion for summary judgment, and on March 28, 1962 the defendant filed a motion that the evidence deposition of John M. Grace be taken on oral instead of written interrogatories, and on March 28, 1962 the court so ordered. On March 30, 1962 the trial court entered a judgment order denying plaintiff's motion to strike defendant's motion for summary judgment and entering a judgment in favor

of the defendant and against the plaintiff. From that judgment order this appeal is taken.

The defendant in support of its motion for summary judgment filed no affidavits. It only filed the discovery deposition of the plaintiff, and in its brief it concedes that the plaintiff's testimony in the discovery deposition must be taken as true. The defendant has objected to the accuracy of the abstract with reference to the conversations testified to in the deposition and we have taken the conversations from the record rather than from the abstract. In that deposition the plaintiff testified that she started to work for the defendant in 1929; that she filled various parts of employment until she became traffic manager, which was her position at the time she left the employ of the company. She further testified that she left the employ of the company on December 23, 1954, and that before that time she had a conversation with Mr. Vaughan, who was then president of the company and who was dead at the time the deposition was taken. She thinks that conversation was held in 1943 or 1944. At the time she had been ill and was going to have an operation and was worried. She stated that Mr. Vaughan called her into his office and said: " 'Marie, don't worry, because as long as you will be here you will always be taken care of, and you will receive your salary until you can't work any more.' " Mr. Vaughan died in 1945. She further testified that he also had said to her: " 'You know, Marie, you don't have to worry about if you quit here. If you stay here, you have been a loyal employee, and if when you would retire we will pay you your full—we will pay your salary for the rest of your life. So don't worry.' " About the 15th of December, 1954 she had a conversation with a Mr. Burchill, who told her that Mr. Grace, who was then the president of the company, wanted to see her about a retirement or a pension, and she said that she could not afford to retire on a pension.

236

Burchill then said that she did not have to worry and that Mr. Grace had said that she would receive her full pay for the rest of her life. She stated she then went into Mr. Grace's office, and he said to her: " 'Marie, I have tried to work out something for you. I know you have been worried and you have been nervous, and' he said, 'I want you to take your retirement now, and we will—the company will pay you the full salary for the rest of your life.' " Her full salary at that time was $375 a month. The plaintiff said that at that time she was worried about her son's illness and that while she could work she was very tense. She had no further discussion with anyone connected with the defendant prior to the time that she ceased to work for defendant. She received a check from the company each month for $375, less deductions, until about June or July 1957, when she was called by an official of the defendant and was told the company was going to reduce her salary to half. At that time she was sixty-two years old, and the company official told her she could take her social security then. In February 1961 the defendant sent her a letter telling her that she would receive no more payments from the defendant. She also testified that she would probably be working there yet if at the time of the conversation with Mr. Grace she had not had her son's problem to contend with.

The defendant's contention in this court is that the promises to pay the plaintiff her full salary upon retirement were without consideration and are unenforceable.

There would seem to be no question that the statement made to the plaintiff by Mr. Grace constituted an offer to pay the plaintiff her full salary if she retired immediately. It is immaterial whether we consider that the offer ripened into a bilateral or a unilateral contract. Either there was sufficient in the conversation to imply an assent on the part of the

237

plaintiff which would make it a bilateral contract or it was a unilateral contract, the acceptance of which was evidenced by plaintiff's leaving her employment. Hence the defendant is right in contending that the only question is the question whether there was a sufficient consideration to support the promise. The question of the necessity for the meeting of minds and the sufficiency of consideration in making a valid contract has intrigued the courts and the law writers from the time of the passage of the Statute of Westminster. In discussing consideration Professor Corbin, in 1 Corbin on Contracts, sec 109, says:

"Knowledge of what the early law and custom were has much lively historical interest and would have some practical value, also, to courts and lawyers and clients. We must be content, however, without this knowledge, and must discover our contract law and our doctrine of 'consideration' from the reports and records of recent times, containing as they do the customs, the decisions, the doctrines, and the reasoning of the men who have been the ministers of justice.

"The reports and records of recent times! Courts and jurisdictions scattered over all the continents and the seven seas! Cases by the million! Libraries so labyrinthine as to require a guide! The leaves of the books like the leaves of the trees! Who can now read all the reports of cases dealing with the law of consideration for informal promises, stating the reasons deemed sufficient for enforcing such promises, laying down the doctrines and constructing the definitions? Certainly not the writer of this volume. He has merely read enough of them to feel well assured that the reasons for enforcing informal promises are many, that the doctrine of consideration is many doctrines, that no definition can

238

rightly be set up as the one and only correct definition, and that the law of contract is an evolutionary product that has changed with time and circumstance and that must ever continue so to change."

In Feinberg v. Pfeiffer Co., 322 SW2d 163 (Mo), the facts are startlingly similar to the facts in the case now before us. Suit was brought against the defendant corporation by the plaintiff, a former employee, on an alleged contract whereby the defendant agreed to pay plaintiff the sum of $200 a month for life upon her retirement. The plaintiff had worked for the defendant in various capacities from 1910 until 1949. On December 27, 1947 at an annual meeting of the defendant's board of directors, a resolution was passed which, after reciting that the plaintiff had given the corporation many years of long and faithful service and in that service had exhibited devotion and exceptional ability and skill, provided that while the directors hoped she would continue in her present position as long as she felt able, nevertheless her salary should be increased from $350 to $400 a month and that she would be given the privilege of retiring at any time she might elect to do so upon her retirement pay of $200 a month for life. The plaintiff was informed of the passage of the resolution and continued to work for the defendant through June 30, 1949, when she retired. The defendant commenced to pay her $200 a month. There were some changes in the managerial staff of the corporation, and in 1956 they reduced the plaintiff's payment to $100 a month. She refused to accept it and brought the action against the corporation. The court says (p 166):

> "Appellant's next complaint is that there was insufficient evidence to support the court's findings that plaintiff would not have quit defend-

239

ant's employ had she not known and relied upon the promise of defendant to pay her $200 a month for life, and the finding that, from her voluntary retirement until April 1, 1956, plaintiff relied upon the continued receipt of the pension installments. The trial court so found, and, in our opinion, justifiably so. Plaintiff testified, and was corroborated by Harris, defendant's witness, that knowledge of the passage of the resolution was communicated to her on December 27, 1947, the very day it was adopted. She was told at that time by Harris and Flammer, she stated, that she could take the pension as of that day, if she wished. She testified further that she continued to work for another year and a half, through June 30, 1949; that at that time her health was good and she could have continued to work, but that after working for almost forty years she thought she would take a rest. Her testimony continued:

" 'Q. Now, what was the reason—I'm sorry. Did you then quit the employment of the company after you—after this year and a half? A. Yes.

" 'Q. What was the reason that you left? A. Well, I thought almost forty years, it was a long time and I thought I would take a little rest.

" 'Q. Yes. A. And with the pension and what earnings my husband had, we figured we could get along.

" 'Q. Did you rely upon this pension? A. We certainly did.

" 'Q. Being paid? A. Very much so. We relied upon it because I was positive that I I was going to get it as long as I lived.

" 'Q. Would [you] have left the employment of the company at that time had it not been for this pension? A. No.

" '. . .

" 'Q. Was your health good? A. My health was good.'

It is obvious from the foregoing that there was ample evidence to support the findings of fact made by the court below."

The court points out that the defendant contended that the resolution in question was merely a promise to make a gift and that no contract resulted because of lack of consideration given or paid by the plaintiff, that the only consideration was the long years of faithful service by the plaintiff set out in the resolution, and that past services are not a valid consideration for a promise. The court stated:

"Defendant argues further that there is nothing in the resolution which made its effectiveness conditional upon plaintiff's continued employment, that she was not under contract to work for any length of time but was free to quit whenever she wished, and that she had no contractual right to her position and could have been discharged at any time."

The opinion states that the plaintiff agreed that a promise based upon past services would lack sufficient consideration, but she contended that there were additional considerations, one of which was the plaintiff's change of position, i. e., her retirement, and the abandonment by her of her opportunity to continue in gainful employment, which retirement was taken in reliance on defendant's promise to pay her $200 a month for life. As to that contention the court said:

241

". . . we must agree with plaintiff. By the terms of the resolution defendant promised to pay plaintiff the sum of $200 a month upon her retirement. Consideration for a promise has been defined in the Restatement of the Law of Contracts, Section 75, as:

> " '(1) Consideration for a promise is
>
> > (a) an act other than a promise, or
> > (b) a forbearance, or
> > (c) the creation, modification or destruction of a legal relation, or
> > (d) a return promise,
>
> bargained for and given in exchange for the promise.'

As the parties agree, the consideration sufficient to support a contract may be either a benefit to the promisor or a loss or detriment to the promisee. . . . [Cases cited.]

"Section 90 of the Restatement of the Law of Contracts states that: 'A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.' This doctrine has been described as that of 'promissory estoppel,' as distinguished from that of equitable estoppel or estoppel in pais, the reason for the differentiation being stated as follows:

> " 'It is generally true that one who has led another to act in reasonable reliance on his representations of fact cannot afterwards in litigation between the two deny the truth of the representations, and some courts have

242

sought to apply this principle to the formation of contracts, where, relying on a gratuitous promise, the promisee has suffered detriment. It is to be noticed, however, that such a case does not come within the ordinary definition of estoppel. If there is any representation of an existing fact, it is only that the promisor at the time of making the promise intends to fulfill it. As to such intention there is usually no misrepresentation and if there is, it is not that which has injured the promisee. In other words, he relies on a promise and not on a misstatement of fact; and the term "promissory" estoppel or something equivalent should be used to make the distinction.' Williston on Contracts, Rev Ed, Sec 139, Vol 1.

In speaking of this doctrine, Judge Learned Hand said in Porter v. Commissioner of Internal Revenue, 2 Cir, 60 F2d 673, 675, that '. . . "promissory estoppel" is now a recognized species of consideration.' "

The court then discusses whether there was such an act on the part of the plaintiff in reliance upon the promise contained in the resolution as will estop the defendant and create an enforceable contract, and the court concludes there was, quoting one of the illustrations cited under Section 90 of the Restatement: " '2. A promises B to pay him an annuity during B's life. B thereupon resigns a profitable employment, as A expected that he might. B receives the annuity for some years, in the meantime becoming disqualified from again obtaining good employment. A's promise is binding.' " The court then points out that at the time the plaintiff retired she was fifty-seven years of age and at the time the payments were discontinued she was over sixty-three years of age. The court said:

243

"It is a matter of common knowledge that it is virtually impossible for a woman of that age to find satisfactory employment, much less a position comparable to that which plaintiff enjoyed at the time of her retirement." The court found that there was ample consideration to make a valid contract.

In 17 CJS Contracts, sec 74, it is stated that where a promise is made which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee, and which does induce such action or forbearance, such promise is binding if injustice can be avoided only by enforcement of the promise. See 12 ILP Contracts, sec 83. Professor Corbin in 1 Corbin on Contracts, sec 194, quotes with approval section 90 of the Restatement of Contracts which has been quoted in the Feinberg case.[1] Professor Corbin states:

> "It is the belief of the present writer that the court decisions compel the inclusion of some such rule as that adopted by the Institute, and that the generally prevailing law never was inconsistent with it."

Also see 12 Am Jur Contracts, sec 112. This rule has been applied in Illinois in cases dealing with subscription contracts. In Dewein v. Dewein, 30 Ill App2d 446, 174 NE2d 875, the court says:

> "Finally it is asserted that the doctrine of promissory estoppel should be applied. That doctrine arose in the 'subscription' cases to make a promise enforcible when acted upon. It has been applied in a limited manner in other cases. 12 Am

---

[1] In 1 Corbin on Contracts, sec 204, Professor Corbin disapproves of the use of the term "promissory estoppel" and says: "The American Law Institute was well advised in not adopting this phrase and in stating its rule in terms of action or forbearance in reliance on the promise."

244

Jur Contracts, Section 112. The essential element of the doctrine is that the promisee has acted to his detriment in reliance on the promise."

In that case the court held that the conditions had not been fulfilled. In Estate of Augustus Switzer v. Gertenbach, 122 Ill App 26, the court holds that a mere promise to make a gift out of the promisor's estate, even when evidenced by a promissory note delivered in the lifetime of the maker, is only an unexecuted intention to make a gift, which is revoked by the death of the donor. The court then says:

> "But where money has been expended or liabilities incurred in reliance upon the promise, which, as a legal necessity, will cause loss or injury to the person to whom the promise is made, unless the promise is enforced, the donor or promisor is required, in good conscience, to pay, and the same may be collected out of his estate. Beatty v. Western College, 177 Ill 280. It is in such cases, the expending of money or the incurring of legal liabilities operating by way of estoppel, that gives the right of the action and without which there is no cause of action. . . . [Cases cited.]"

See also Laughlin v. Irwin, 262 Ill App 40.

It would seem that in the instant case and under the authorities cited and previously discussed it would appear that the plaintiff in absolute reliance upon the promise of the defendant did retire from the service of the company and by so doing placed herself in practically the same position as the plaintiff in the Feinberg case. It might also be plausibly argued that plaintiff, when she accepted the promise made to her by Grace on behalf of the defendant corporation and within two weeks retired from her position in the company, did an act which even without the invocation of

the theory of estoppel would constitute a sufficient consideration to support the contract.

The defendant in its brief argues that the statement of Mr. Vaughan to the plaintiff could not be considered by this court because it could not be admitted in evidence under the provision of the so-called Dead Man's Act (Ill Rev Stats c 51, § 4). However, in case of a trial, had the plaintiff testified without objection the conversation with Vaughan could properly be considered by the court. In the case before us the discovery deposition was taken on behalf of the defendant. There is no indication in the record that any objection was made to the conversation at the time the deposition was taken, and even if there had been, the fact that the deposition was attached in full to defendant's motion for summary judgment and no affidavits were filed would put the defendant in a position where it was relying on all statements which were made in the deposition. In the deposition Vaughan made the statement that the plaintiff could work and receive her salary until she could not work any more. Counsel argues that the employment of the plaintiff was one at will. The statement of Vaughan makes her employment an employment as long as she could work. Consequently when she retired in reliance on Grace's promise she suffered a detriment, and even without Vaughan's statement we think that her retirement in reliance on the promise, even if her employment was one at will, where there was no suggestion or threat made that she was to be discharged, would be a sufficient consideration. In 1 Corbin on Contracts, sec 122, it is said:

> "It is true that most of the considerations that have been given constitute a detrimental economic change in the promisee's life. It is true, also, that most detrimental economic changes are a sufficient consideration when bargained for and given

in exchange for a promise. There are a good many cases, however, in which a consideration that was held to be sufficient can not reasonably be regarded as involving any economic loss."

■ The adequacy of the consideration is immaterial. Professor Williston in 1 Williston on Contracts, sec 102A, 3rd ed, says:

"Both benefit and detriment have a technical meaning. Neither the benefit to the promisor nor the detriment to the promisee need be actual. 'It would be a detriment to the promisee, in a legal sense, if he, at the request of the promisor and upon the strength of that promise, had performed any act which occasioned him the slightest trouble or inconvenience, and which he was not obliged to perform.' . . . Detriment, therefore, as used in testing the sufficiency of consideration means legal detriment as distinguished from detriment in fact. It means giving up something which immediately prior thereto the promisee was privileged to retain, or doing or refraining from doing something which he was then privileged not to do or not to refrain from doing."

The defendant raises no question as to the authority of Grace to make the promise to the plaintiff which he made. The written interrogatories which the plaintiff proposed to submit to Grace would require him to state as to whether or not he had the conversation in question with the plaintiff, who was present and when and where the conversation took place, whether or not he had discussed the conversation with the other directors of the defendant at the next meeting of the board of directors and what was said by them when the conversation was detailed to them, whether the agreement in regard to the plaintiff appeared in the minutes of the corporation, and as to whether or not

247

the board of directors up to the present time has either formally or informally rescinded or repudiated the agreement made with the plaintiff. The defendant moved that Grace's testimony be taken on oral instead of written interrogatories. In its motion the defendant stated: "It appears from said questions and defendant is informed, that said John M. Grace is a material witness to this litigation and will give testimony favorable to plaintiff on the material issues raised by the pleadings," and further stated that only on cross-examination of Grace can it reasonably be expected to bring out "the detailed shadings of fact necessary to present an accurate portrayal of the occurrence or to discredit the witness." The court allowed defendant's motion on March 28, 1962.

The defendant has cited and relied on certain cases to support its contention that the agreement did not constitute a sufficient consideration. It relies principally on Plowman v. Indian Refining Co., 20 F Supp 1. In that case there was a trial and evidence was presented both on behalf of the plaintiff and the defendant. Certain employees had been laid off by the defendant company because of economic conditions. The court found that, assuming that each of the employees at that time was told that wage payments which he was then receiving would continue for his lifetime, the arrangement was made by a corporate officer who had no authority to make such a contract and no authorization or ratification of such contract was reflected in the minutes of the corporation. The men had been paid for a period of time, but there was no showing that there was any knowledge on the part of the duly authorized officers of the company that the men were not working or were receiving pensions or that they had been promised payment for life. The court held that consequently there was no ratification, express or implied, and no estoppel. The court further holds that the mere promise, standing alone,

is a promise without consideration since it only was based upon the long and faithful services of the employees, which is not a sufficient consideration.

The defendant also relies on Hughes v. Encyclopaedia Britannica, Inc., 1 Ill App2d 514, 117 NE2d 880. In that case the pleadings alleged that the defendant had put into effect a retirement income plan for its employees by which it agreed to purchase retirement insurance for the employees each year, and that it had sent notices to the employees which were such that the defendant could reasonably expect to induce the plaintiffs and all employees to continue in its employ in order to obtain the benefits of the plan. The court first holds that the noncontributory pension plan did not give rise to an enforceable unilateral contract. The court discusses the theory advanced by the plaintiffs that the defendant is liable under the doctrine of promissory estoppel as discussed in Restatement of the Law of Contracts, section 90. The court holds that this rule is not applicable to the case because the plaintiffs have failed to show a good cause of action under that theory because there is no fraud, no intent to deceive, and no detrimental change of position.

Crawford v. Peabody Coal Co., 34 Ill App2d 338, 181 NE2d 369, was a case in which suit was brought on an alleged oral contract between plaintiff and the defendant, the plaintiff alleging a contract wherein defendant agreed to pay him $200 per month for life in consideration of the plaintiff's agreement to remove himself from the roll of defendant's employees and the further consideration of plaintiff refraining from working for any other coal mining company. There was a trial before a court and jury, and judgment was entered for the plaintiff. The facts show that the plaintiff in June 1946 had sustained carbon monoxide poisoning during his employment. He was unable to work until September of that year. He re-

turned for several days, laying off again until January 1947. He was paid his regular salary until this latter date. In December the plaintiff talked to certain supervisory employees of the defendant, and he testified that he was told he would be paid $200 a month for the rest of his natural life. The payments were made and continued from January 1947 to December 31, 1954. The court points out that the plaintiff's right to recover is predicated solely on the agreement in December 1946 and stated that the plaintiff's testimony as to that agreement is not substantiated since all the others who had participated in the discussion had died. The court also points out that the plaintiff at the time of the alleged agreement was ill from the effects of an occupational accident and that "the record is bare of any evidence of his right to remain as an employee despite his health, nor is there anything in the record to establish that he had other rights, statutory or contractual, against the company that he surrendered in bargaining for this pension." The court further says, after setting out the definition of "consideration" in 12 ILP Contracts, sec 83, that the "record shows nothing of benefit passing to the defendant nor a detriment to the plaintiff. . . . there is no showing he had a right to or was able to continue his labors for defendant at the time of the contract. Second, his abstaining from seeking other employment. By plaintiff's own admission he could not work for defendant or do any like work at the time of the agreement." The court does not discuss section 90 of the Restatement of the Law of Contracts or determine whether or not it would be applicable, and reverses the judgment of the trial court.

█ In our opinion none of these cases are applicable to the case before us. In this case a summary judgment was entered. It is further our opinion that there were controverted issues of fact to be decided.

It might be noted in passing that the defendant did not plead lack of consideration or set it up in any way except by filing the discovery deposition.

The judgment of the Circuit Court of Cook County is reversed and the cause is remanded with directions to overrule defendant's motion for summary judgment, and for such other and further proceedings as are in accord with this opinion.

Reversed and remanded with directions.

DEMPSEY, P. J. and SCHWARTZ, J., concur.