In re MARRIAGE OF JOANNE E. HUNT, Petitioner-Appellant and Cross-Appellee, and JAMES N. HUNT, Respondent-Appellee and Cross-Appellant.

First District (1st Division)    No. 79-86

Opinion filed November 5, 1979.

654

Behanna and Pasquesi, P. C., of Highland Park (C. William Bockelman, Jr., of counsel), for appellant.

Peter Fricano and Michael Fio Rito, both of Chicago, for appellee.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Joanne E. Hunt, petitioner, brought this action to dissolve her marriage with James N. Hunt, respondent. The trial court entered judgment dissolving the marriage and adjudicating the financial rights of the parties. Petitioner appeals from the trial court's decision that respondent's interests in a pension plan and profit-sharing plan were not "marital property." Respondent cross-appeals, arguing that the amount of property and maintenance awarded to petitioner was excessive.

Petitioner and respondent were married on March 17, 1951. Petitioner filed for dissolution of their marriage on December 21, 1977. At the time of the dissolution proceeding, petitioner was 49 years old and respondent was 48. They had two children, a 19-year-old daughter who was a college student and a 16-year-old son who was a high school student. Petitioner was employed by a travel agency and had a salary, after payroll deductions, of $400 a month. Respondent has been employed by Chicago Tribune, Inc. (Tribune), since September 1951. His salary, after payroll deductions, was $2100 per month and he was also reimbursed by the Tribune approximately $500 per month for business meals, travel expenses and business entertainment.

The trial court entered judgment dissolving the marriage on October 19, 1978. Petitioner was given custody of the minor child. The trial court awarded petitioner $750 per month as permanent maintenance and $300 per month as child support for the minor child until he reaches 18. The court also found that the marital residence, a 1975 Buick automobile and various household furniture were marital property. The court ordered that petitioner and the minor child be permitted to remain in the marital residence until the minor child graduates from high school or reaches 18, whichever event occurs later. The marital residence, which has an

appraised value of $125,000 and is encumbered by a $40,000 mortgage, is to be sold at that time. Until the property is sold, petitioner is responsible for making all mortgage, tax and insurance payments on the house. Petitioner is to be reimbursed for one-half of these payments out of the proceeds from the sale of the marital residence. In addition, after the mortgage and closing costs are paid, petitioner is to receive 75% and respondent 25% of the balance of the proceeds from the sale of the marital residence. Petitioner was also awarded the 1975 Buick automobile and all of the household furniture and furnishings. Finally, the trial court found that respondent had interests in both a pension plan and a profit-sharing plan provided by the Tribune. The court held that respondent's pension and profit-sharing interests were not marital property, but were his completely, and that petitioner had "no interest therein."

Section 503 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 503) is made applicable to this case by section 801 of that act (Ill. Rev. Stat. 1977, ch. 40, par. 801). Section 503, based on section 307 of the Uniform Marriage and Divorce Act, defines "marital property" and provides for its distribution to husband and wife upon dissolution of marriage as follows (Ill. Rev. Stat. 1977, ch. 40, par. 503):

"§503. Disposition of property

(a) For purposes of this Act, 'marital property' means all property acquired by either spouse subsequent to the marriage, except the following, which is known as 'non-marital property':

(1) property acquired by gift, bequest, devise or descent;

(2) property acquired in exchange for property acquired before the marriage or in exchange for property acquired by gift, bequest, devise or descent;

(3) property acquired by a spouse after a judgment of legal separation;

(4) property excluded by valid agreement of the parties;

(5) the increase in value of property acquired before the marriage; and

(6) property acquired before the marriage.

(b) All property acquired by either spouse after the marriage and before a judgment of dissolution of marriage or declaration of invalidity of marriage is presumed to be marital property, regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, or community property. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection (a) of this Section.

(c) In a proceeding for dissolution of marriage or declaration of invalidity of marriage, or in a proceeding for disposition of property following dissolution of marriage by a court which lacked personal jurisdiction over the absent spouse or lacked jurisdiction to dispose of the property, the court shall assign each spouse's non-marital property to that spouse. It also shall divide the marital property without regard to marital misconduct in just proportions considering all relevant factors, including:

(1) the contribution or dissipation of each party in the acquisition, preservation, or depreciation or appreciation in value, of the marital and non-marital property, including the contribution of a spouse as a homemaker or to the family unit;

(2) the value of the property set apart to each spouse;

(3) the duration of the marriage;

(4) the relevant economic circumstances of each spouse when the division of property is to become effective, including the desirability of awarding the family home, or the right to live therein for reasonable periods, to the spouse having custody of the children;

(5) any obligations and rights arising from a prior marriage of either party;

(6) any antenuptial agreement of the parties;

(7) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties;

(8) the custodial provisions for any children;

(9) whether the apportionment is in lieu of or in addition to maintenance; and

(10) the reasonable opportunity of each spouse for future acquisition of capital assets and income.

(d) The court may protect and promote the best interests of the children by setting aside a portion of the jointly or separately held estates of the parties in a separate fund or trust for the support, maintenance, education, and general welfare of any minor, dependent, or incompetent child of the parties."

Under section 503, all "property" which is "acquired" after marriage and before divorce is "marital property" unless specifically excepted, and marital property is to be divided between spouses "without regard to marital misconduct in just proportions considering all relevant factors."

Petitioner contends that respondent's interests in the Tribune pension and profit-sharing plans are fully vested and that the benefits began accruing when respondent started working for the Tribune five months after he and petitioner were married. Therefore, petitioner argues,

respondent's pension and profit-sharing interests were property acquired after marriage, and should have been considered marital property, because they do not come within the six exceptions. Respondent contends that his pension and profit-sharing interests are not fully vested and, therefore, are not marital property because they are not "property." Respondent also maintains that only the Tribune contributes to the pension and profit-sharing plans. He argues that an interest in a pension or profit-sharing plan cannot be marital property when it has not been funded through the employee spouse's own contributions, which would otherwise have been available to both spouses during their marriage.

■■ In considering the issues raised, it is necessary to define some of the terminology. An employee's interest in a pension or profit-sharing plan is said to be "vested" if it is not forfeited by the discharge or voluntary retirement of the employee prior to retirement age. (*In re Marriage of Brown* (1976), 15 Cal. 3d 838, 544 P.2d 561, 126 Cal. Rptr. 63.) A vested interest should be distinguished from a "matured" interest, that is, an unconditional right to immediate payment. (*Brown.*) An employee's right to pension or profit-sharing benefits, for example, may vest after a term of service, but not mature until the employee reaches the age of retirement and elects to retire. Finally, a "non-contributory" pension or profit-sharing plan is one which is funded solely by the employer.

The record in this case includes summaries prepared by the Tribune of the terms of its pension and profit-sharing plans. The summary of the pension plan indicates that respondent's pension interest is noncontributory, and that respondent, having completed 10 years of service, may retire immediately and begin receiving pension payments at age 65, or at age 55 if he so elects. Thus, based on this summary of the pension plan, respondent's pension interest appears to be unmatured but vested. The summary of the profit-sharing plan shows that respondent's profit-sharing interest is also noncontributory, and is divided into Parts A and B. Based on the summary of the plan, Part A appears to be vested, but it is unclear whether Part B is fully vested.

■■ Respondent argues that the summaries of the pension and profit-sharing plans were not admitted into evidence and, therefore, cannot be considered. However, the pension-plan summary was in fact admitted into evidence, and the profit-sharing summary, while not admitted, was introduced in the trial court. The praecipe for record, by stipulation, includes all exhibits introduced in the trial court. Therefore, both of these documents are part of the record on appeal. (See Supreme Court Rule 321 (58 Ill. 2d R. 321).) In any event, our holding renders it unnecessary to make a definitive determination, based on these documents, whether respondent's pension and profit-sharing interests are vested or nonvested. We hold that an employee spouse's contractual right to a pension or

profit-sharing interest is "property" under section 503 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 503), regardless of whether the interest is matured, vested or nonvested, or contributory or noncontributory. Any part of such pension or profit-sharing interest earned by the employee spouse while married is property "acquired" during marriage within the meaning of section 503 and is, therefore, marital property.

Case law in Illinois and in other States with statutes comparable to section 503 supports this view. For example, in a recent case (*In re Marriage of Musser* (1979), 70 Ill. App. 3d 706, 388 N.E.2d 1289), the Fourth District of this court held that a matured pension interest was marital property. In *Musser*, the husband had retired from the military and had begun receiving military retirement payments. Husband and wife had been married for 217 months of husband's 240 months of military service. The court held that the husband's military retirement pay was "not a gratuity, but an earned property right which accrues by reason of the individual's years of military service" (*Musser*, at 709) and, therefore, 217/240 of the husband's retirement benefits were marital property under section 503.

Courts in States which, like Illinois, have adopted a statute based on section 307 of the Uniform Marriage and Divorce Act (see Colo. Rev. Stat. §14—10—113 (Supp. 1978)) or a statute similar thereto (see Del. Code Ann. tit. 13, §1513 (Supp. 1978); Mo. Rev. Stat. §452.330 (1977); N.J. Stat. Ann. §2A:34—23 (Supp. 1977)), have also, almost without exception, held that unmatured but vested pension or profit-sharing interests earned during marriage should be included among the property divided between spouses upon divorce. (See *In re Marriage of Pope* (1975), 37 Colo. App. 237, 544 P.2d 639; *Husband B v. Wife B* (Del. Super. 1978), 396 A.2d 169; *In re Marriage of Powers* (Mo. App. 1975), 527 S.W.2d 949; *McGrew v. McGrew* (1977), 151 N.J. Super. 515, 377 A.2d 697.) The rationale for these decisions is that pension or profit-sharing payments are deferred compensation earned during the working years. Therefore, if the employee spouse was married while working, "[l]ogically, * * * the right to such payments should be treated as property 'acquired' during the marriage * * *." *Kruger v. Kruger* (1976), 139 N.J. Super. 413, 418, 354 A.2d 340, 343, *modified* (1977), 73 N.J. 464, 375 A.2d 659.

Community property States have likewise held that vested pension or profit-sharing interests are community property subject to division in a divorce proceeding. (*E.g., In re Marriage of Martin* (1975), 50 Cal. App. 3d 581, 123 Cal. Rptr. 634.) This is significant, because section 503's definition of marital property, including its recognition of the value of the wife's services as a homemaker, is similar to the community property concept that property earned during marriage is community property

"because it is acquired by the labor and industry of members of a form of partnership, that is, a marital partnership \* \* \* and whatever is earned or gained by one marital partner during the existence of the marital partnership must accrue to the benefit of both partners." W. DeFuniak and M. Vaughn, Principles of Community Property 128 (2d ed. 1971). See also Kalcheim, *Marital Property, Tax Ramifications, and Maintenance: Practice Under the Illinois Marriage and Dissolution of Marriage Act—A Comparative Study*, 66 Ill. B. J. 324, 325 (1978); 42 Mo. L. Rev. 143, 144 (1977).

■■■ In construing an Illinois statute, decisions of other States construing similar laws are entitled to respect and consideration. (*Cooper v. Hinrichs* (1957), 10 Ill. 2d 269, 140 N.E.2d 293; *People v. Turner* (1976), 35 Ill. App. 3d 550, 342 N.E.2d 158.) Based on the above-cited cases, it is clear that under section 503, both matured as well as unmatured but vested pension or profit-sharing interests earned during marriage should be included in the marital property divided between husband and wife upon divorce.

Insofar as nonvested pension or profit-sharing interests are concerned, some courts have in the past held that they are "expectancies" and not "property" and therefore cannot be part of the property divided between spouses upon divorce. (*French v. French* (1941), 17 Cal. 2d 775, 112 P.2d 235, *overruled in In re Marriage of Brown* (1976), 15 Cal. 3d 838, 544 P.2d 561, 126 Cal. Rptr. 633; *White v. White* (1975), 136 N.J. Super. 552, 347 A.2d 360; but see *Blitt v. Blitt* (1976), 139 N.J. Super. 213, 353 A.2d 144; *Lumpkins v. Lumpkins* (Tex. Civ. App. 1975), 519 S.W.2d 491; but see *Cearley v. Cearley* (Tex. 1976), 544 S.W.2d 661.) However, several courts have recently held that even nonvested interests are property which, if earned during marriage, ought to be included in the property division. The most important of these recent cases is *In re Marriage of Brown* (1976), 15 Cal. 3d 838, 544 P.2d 561, 126 Cal. Rptr. 633, for in *Brown* the Supreme Court of California overruled *French v. French* (1941), 17 Cal. 2d 775, 112 P.2d 235, the leading case for the doctrine that nonvested pension interests are mere expectancies.

In *Brown*, the California Supreme Court held that a nonvested, noncontributory pension interest is a contingent interest in property, not a mere expectancy. An expectancy, the court said, "describes the interest of a person who merely forsees that he might receive a future beneficence, such as the interest of an heir apparent \* \* \* or of a beneficiary designated by a living insured who has a right to change the beneficiary." (*Brown*, 15 Cal. 3d 838, 845, 544 P.2d 561, 565, 126 Cal. Rptr. 633, 637.) Retirement pensions, however, said the court, are not gratuities and " 'do not derive from the beneficence of the employer, but are properly part of the consideration earned by the employee \* \* \*.' " (*Brown*, 15 Cal. 3d

838, 845, 544 P.2d 561, 565, 126 Cal. Rptr. 633, 637.) Therefore, an employee's pension interest is a contractual right to deferred compensation, and thus "property", *i.e.*, a chose in action. Moreover, the court explained, the fact that a nonvested pension interest is, by contract, contingent upon certain events does not reduce it to an expectancy, because "[t]he law has long recognized that a contingent future interest is property * * * no matter how improbable the contingency * * *." (*Brown*, 15 Cal. 3d 838, 846 n.8, 544 P.2d 561, 566 n.8, 126 Cal. Rptr. 633, 638 n.8.) Furthermore, said the court, treating a nonvested pension interest as community property is justified by the fact that "[o]ver the past decades, pension benefits have become an increasingly significant part of the consideration earned by the employee for his services" and "[a]s the date of vesting and retirement approaches, the value of the pension right grows until it often represents the most important asset of the marital community." (*Brown*, 15 Cal. 3d 838, 847, 544 P.2d 561, 566, 126 Cal. Rptr. 633, 638.) Thus, if nonvested pension rights were not included among the community property allocated in a divorce proceeding, there would be an inequitable division of marital assets.

The supreme courts of Arizona and Texas, community property States, and the Supreme Court of Wisconsin, all citing *Brown*, have also recently held that nonvested pension interests earned during marriage should be included among the property divided between spouses upon divorce. (*Van Loan v. Van Loan* (1977), 116 Ariz. 272, 569 P.2d 214; *Cearley v. Cearley* (Tex. 1976), 544 S.W.2d 661; *Leighton v. Leighton* (1978), 81 Wis. 2d 620, 261 N.W.2d 457.) Wisconsin, like Illinois, does not place paramount importance on who has title when dividing property between spouses upon divorce. (Wis. Stat. 1977, §247.26.) In addition, in an earlier case, *DeRevere v. DeRevere* (1971), 5 Wash. App. 741, 491 P.2d 249, the Court of Appeals of Washington, a community property State, held that a nonvested pension interest is property divisible upon divorce. *DeRevere* is particularly significant because the court also stated why a pension interest is community property in the form of deferred compensation, regardless of whether the pension interest is contributory or noncontributory:

"* * * [T]here is no distinction between a retirement plan financed through employee salary deduction and one financed exclusively by the employer. If the employee is married, the plan is financed and rights are being purchased either by community funds or community labor. * * *" (5 Wash. App. 741, 745-46, 491 P.2d 249, 252.)

By analogy, whether an employee's pension or profit-sharing interest is contributory or noncontributory has no significance concerning whether it

is marital property. In either case, the interest is realistically viewed as a substitute for wages or salary. See *Blitt v. Blitt* (1976), 139 N.J. Super. 213, 353 A.2d 144.

● 6-8 In Illinois, the term "property" has been defined as "a word of the very broadest import, connoting any tangible or intangible res which might be made the subject of ownership." (*Harvey Wrecking Co. v. Certain Underwriters at Lloyd's, London* (1968), 91 Ill. App. 2d 449, 455-56, 235 N.E.2d 385.) Also, in Illinois an employee's pension or profit-sharing interest bargained for in return for services is usually considered a contractual right to a form of deferred compensation, entitlement to which depends on the terms of the pension or profit-sharing plan. (See *Anger v. Bender* (1975), 31 Ill. App. 3d 877, 335 N.E.2d 122; *Guinzy v. Curtice Burns, Inc.* (1975), 28 Ill. App. 3d 398, 327 N.E.2d 284; *Crawford v. Peabody Coal Co.* (1962), 34 Ill. App. 2d 388, 181 N.E.2d 369.) The cases discussed above convince us that such a contractual pension or profit-sharing interest, whether matured, vested or nonvested, contributory or noncontributory, is a chose in action (*People ex rel. Vancil Motor Co. v. Weaver* (1942), 313 Ill. App. 317, 40 N.E.2d 83) and "property" (see 30 Ill. L. & Prac. *Property* §3 (1957)) under section 503 of the Illinois Marriage and Dissolution of Marriage Act. Therefore, any part of such pension or profit-sharing interest earned, that is, "acquired," during marriage is marital property. In so holding, we agree with the court in *Brown* that our recognition of spousal rights in pension or profit sharing interests will not disrupt the employee spouse's freedom of contract or limit "the employee's freedom to change or terminate his employment, to agree to a modification of the terms of his employment (including retirement benefits), or to elect between alternative retirement programs." (*Brown*, 15 Cal. 3d 838, 849, 544 P.2d 561, 568, 126 Cal. Rptr. 633, 640.) Thus, "[t]he employee retains the right to decide, and by his decision define, the nature of the retirement benefits owned by the community." *Brown*, 15 Cal. 3d 838, 850, 544 P.2d 561, 568, 126 Cal. Rptr. 633, 640.

■ The summaries of the Tribune's pension and profit-sharing plans state that any respective interest therein will automatically vest if the Tribune terminates the plan. This supports the conclusion that respondent's pension and profit-sharing interests are bargained-for contractual rights to deferred compensation (see *Umshler v. Umshler* (1947), 332 Ill. App. 494, 76 N.E.2d 231) and, whether vested or nonvested, should have been included among the marital property divided between petitioner and respondent.

Respondent urges that it is unrealistic to treat his pension and profit-sharing interests as marital property, because placing a value on these interests will be difficult and speculative. It is true that placing a present

value on a pension or on a profit-sharing interest may be difficult, particularly if, as in this case, they have not matured. However, difficulties in valuation are not an insurmountable barrier to including a pension or profit-sharing interest, whether matured, vested or nonvested, as marital property.

■■ The trial court can in some cases determine, by actuarial evidence, the present value of such an interest at the time of divorce. (42 Mo. L. Rev. 143, 149 (1977).) The amount of the pension or profit-sharing interest included as marital property would then be the present value of the interest multiplied by a fraction whose numerator is the number of years (or months) of marriage during which benefits were being accumulated, and whose denominator is the total number of years (or months) during which benefits were accumulated prior to divorce. Once the trial court has determined the present value of that part of the pension or profit-sharing interest which is marital property, the trial court may award the interest to the employee spouse and give the nonemployee spouse other marital property to offset her marital share in the interest. Kalcheim, *Marital Property, Tax Ramifications, and Maintenance: Practice Under the Illinois Marriage and Dissolution of Marriage Act—A Comparative Study*, 66 Ill. B. J. 324, 335 (1978).

■■ In those instances where it is difficult to place a present value on the pension or profit-sharing interest due to uncertainties regarding vesting or maturation, or when the present value can be ascertained but the type, or lack, of other marital property makes it impractical or impossible to award sufficient offsetting marital property to the nonemployee spouse, then the trial court in its discretion may award each spouse an appropriate percentage of the pension to be paid "if, as and when" the pension becomes payable. (*In re Marriage of Brown* (1976), 15 Cal. 3d 838, 544 P.2d 561, 126 Cal. Rptr. 633; Kalcheim, *Marital Property, Tax Ramifications, and Maintenance: Practice Under the Illinois Marriage and Dissolution of Marriage Act—A Comparative Study*, 66 Ill. B. J. 324, 335 (1978); 42 Mo. L. Rev. 143, 150 (1977).) The marital interest in each payment will be a fraction of that payment, the numerator of the fraction being the number of years (or months) of marriage during which benefits were being accumulated, the denominator being the total number of years (or months) during which benefits were accumulated prior to when paid. The trial court, when using this method of allocation, will retain jurisdiction and award the nonemployee spouse some percentage of the marital interest in each payment. (*In re Marriage of Musser* (1979), 70 Ill. App. 3d 706, 388 N.E.2d 1289; *In re Marriage of Brown* (1976), 15 Cal. 3d 838, 544 P.2d 561, 126 Cal. Rptr. 633; *Cearley v. Cearley* (Tex. 1976), 544 S.W.2d 661.) Placing a present value on a nonvested pension or profit-sharing interest requires a court to take into account the possibility that

death or termination of employment may destroy the interest. (*Brown*, 15 Cal. 3d 838, 848, 544 P.2d 561, 567, 126 Cal. Rptr. 633, 639.) Thus, this second method of allocating the interest seems particularly appropriate if the interest has not vested, because it "divides * * * the risk that the pension will fail to vest." *Brown*, 15 Cal. 3d 838, 848, 544 P.2d 561, 567, 126 Cal. Rptr. 633, 639.

Respondent also contends that including his pension and profit-sharing interests as marital property is prohibited by section 206(d)(1) of the Employee Retirement Income Security Act (ERISA) (29 U.S.C. §1056(d)(1) (1976)), and therefore violates the supremacy clause of the United States Constitution. Section 206(d)(1) states in part that benefits provided under an ERISA covered retirement plan "may not be assigned or alienated." Another argument, not raised by respondent, but which we will consider, is whether classifying respondent's pension and profit-sharing interests as marital property is forbidden by section 514(a) of ERISA (29 U.S.C. §1144(a) (1976)), which provides in relevant part that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA.

ERISA covers private retirement plans maintained by employers engaged in commerce and by labor organizations representing employees engaged in commerce. (29 U.S.C. §1003(a) (1976).) The summaries of the Tribune's pension and profit-sharing plans state that the plans are covered by ERISA.

Similar arguments were rejected by the United States District Court for the Northern District of California in *Stone v. Stone* (N.D. Cal. 1978), 450 F. Supp. 919, *appeal docketed*, No. 78-2313 (9th Cir. June 21, 1978). The court held that a California State court's order, which gave a wife the right to receive a community property share of her husband's ERISA covered retirement benefits, was not an assignment or alienation of those benefits prohibited by section 206(d)(1) of ERISA. The court in *Stone* further held that California community property law, insofar as it permitted the wife to share in the retirement payments, was not a law related to ERISA, and therefore not preempted by section 514(a) of ERISA. The court in *Stone* based its holding in part on the belief that ERISA "does not reject the basic premise of the community property laws that each partner in a marriage deserves an equal share of all marital assets because each made their acquisition possible. * * * The nonemployee spouse earned those pension benefits no less than her husband, and to allow the husband to keep them all would give him a windfall gain at the expense of his wife." *Stone*, at 927.

Other decisions in accord with *Stone* include *Carpenters Pension Trust v. Kronschnabel* (C.D. Cal. 1978), 460 F. Supp. 978, and *In re Marriage of Johnston* (1978), 85 Cal. App. 3d 900, 149 Cal. Rptr. 798, *cert.*

*denied* (Jan. 14, 1980), 48 U.S.L.W. 3452. Although the holding in *Stone* dealt with the effect of sections 206(d)(1) and 514(a) on dividing an ERISA covered pension as community property upon divorce, by analogy the court's construction of those sections is also applicable to a division of ERISA covered pension or profit-sharing interests as marital property. The court in *Stone*, in fact, recognized this, for it stated (450 F. Supp. 919, 931) that preemption by ERISA "would also cause a major change in the division of marital property which a large majority of States seek to achieve because pension benefits constitute a major asset of many marriages" and "Congress has not directly and clearly expressed its intent to cause these consequences, and neither the history nor the structure of ERISA compels that construction."

Respondent argues that the decision by the United States Supreme Court in *Hisquierdo v. Hisquierdo* (1979), 439 U.S. 572, 59 L. Ed. 2d 1, 99 S. Ct. 802, decided after *Stone*, requires that we construe section 206(d)(1) of ERISA to prevent including respondent's pension and profit-sharing interests as marital property. In *Hisquierdo*, the Supreme Court held that section 231m of the Railroad Retirement Act (the Act) (45 U.S.C. §231m (1976)), which prohibits assignment of a worker's benefits, barred a nonemployee spouse from having a community interest upon divorce in retirement benefits expected to be paid her husband under the Act. Respondent maintains that the requirement against alienation of retirement benefits in section 231m is similar to that contained in section 206(d)(1) of ERISA, and that section 206(d)(1) must, therefore, be given the same interpretation. We disagree.

In *Hisquierdo*, the Supreme Court noted that the Railroad Retirement Act also gives a worker's spouse the right to a separate benefit (45 U.S.C. §231a(c)(3)(i) (1976)), but that the nonemployee spouse's right to this separate benefit terminates upon divorce under section 231d(c)(3) of the Act. The Supreme Court referred to section 231d(c)(3) to show that it was Congress' intent in the Railroad Retirement Act that, after divorce, a worker's retirement benefits should be his exclusively. Congress, however, did not provide for a separate benefit for an employee's spouse in ERISA, and there is no provision in ERISA similar to section 231d(c)(3) of the Railroad Retirement Act. This distinction justifies construing section 206(d)(1) of ERISA differently from section 231m of the Railroad Retirement Act, a fact which the Supreme Court itself apparently recognized in the following footnote to its opinion in *Hisquierdo*, 439 U.S. 572, 590 n. 24, 59 L. Ed. 2d 1, 16 n. 24, 99 S. Ct. 802, 813 n. 24:

> "In this case, Congress has granted a separate spouse's benefit, and has terminated that benefit upon absolute divorce. Different considerations might well apply where Congress has remained silent on the subject of benefits for spouses, particularly when the

pension program is a private one which federal law merely regulates. See Employee Retirement Income Security Act of 1974, 88 Stat 829, 29 U.S.C. §1001 *et seq.* [29 USCS §§1001 *et seq.*] Our holding intimates no view concerning the application of community property principles to benefits payable under programs that possess these distinctive characteristics."

Other courts and commentators have stated or implied that the validity of the construction of ERISA section 206(d)(1) by the court in *Stone* was not affected by the Supreme Court's decision in *Hisquierdo*, pointing to the above footnote by the Supreme Court. *Cody v. Riecker* (2d Cir. 1979), 594 F.2d 314; *American Telephone & Telegraph Co. v. Merry* (2d Cir. 1979), 592 F.2d 118; 1979 Wis. L. Rev. 277.

One commentator suggests that while section 206(d)(1) of ERISA may prevent an Illinois court from ordering that retirement benefits in part be paid directly to a nonemployee spouse, this does not preclude the court from treating a pension interest as marital property. Instead, this commentator argues, "the right to receive deferred benefits could be valued in arriving at the 'marital property' aggregation, but the earning spouse would retain his exclusive right to receive payments, and the nonearning spouse's share would, in theory, be satisfied out of other assets, if any." (Shefsky, *Breadwinner v. Breadwinnee*, Northwest Suburban Bar Association Journal 19 (September 1979).) However, assuming section 206(d)(1) did prohibit an "if, as and when paid" type of award, then it also probably would forbid altogether treating a pension interest as marital property. *Hisquierdo*, 439 U.S. 572, 588-89, 59 L. Ed. 2d 1, 15-16, 99 S. Ct. 802, 811-12.

■■ We conclude that sections 206(d)(1) and 514(a) of ERISA do not prevent treating respondent's pension and profit-sharing interests as marital property.

Respondent argues, alternatively, that the trial court actually did include his pension and profit-sharing interests as marital property. He maintains that the trial court would not have given petitioner so much other marital property and maintenance unless the court intended to offset her marital share of the pension and profit-sharing interests. We cannot accept respondent's argument. The order entered by the trial court specifically states that the pension and profit-sharing interests are not marital property, and that petitioner has "no interest therein."

Section 503 of the Illinois Marriage and Dissolution of Marriage Act requires that marital property be divided in "just proportion" between the spouses. Based on the reasons previously set forth, the decision by the trial court not to include respondent's pension and profit-sharing interests as marital property is reversed and remanded.

Respondent also cross appeals from the trial court's award of marital property and maintenance to petitioner, claiming it was excessive. We need not decide this issue.

When dividing marital property under section 503 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 503), a trial court considers, among other things, "the value of the property set apart to each spouse," the "economic circumstances of each spouse when the division of property is to become effective," and the reasonable opportunity of each spouse to receive income in the future. (Ill. Rev. Stat. 1977, ch. 40, par. 503(c).) In addition, in determining the amount of maintenance to award, the trial court considers, among other things, "the financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently" and "the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance." (Ill. Rev. Stat. 1977, ch. 40, par. 504(b).) Also, when awarding child support, the trial court considers, among other things, "the financial resources and needs of the custodial parent" and "the financial resources and needs of the noncustodial parent or parents." Ill. Rev. Stat. 1977, ch. 40, par. 505.

From our reading of the record it is apparent that the decision by the trial court in this case to give the pension and profit-sharing interests entirely to respondent as his separate property probably influenced the court in the amount of its award to petitioner of marital property, maintenance and child support. Therefore, in reversing and remanding the trial court's decision not to include respondent's pension and profit-sharing interests as marital property, we vacate the trial court's division of marital property and award of maintenance and child support. This will enable the trial court equitably to divide all marital property and award proper maintenance and child support with due consideration to the status of the pension and profit-sharing interests as marital property. See *In re Marriage of Olsher* (1979), 78 Ill. App. 3d 627, 397 N.E.2d 488.

Reversed in part, vacated in part, and remanded.

GOLDBERG, P. J., and CAMPBELL, J., concur.