*In re* MARRIAGE OF MARION PIEPER, Petitioner-Appellant, and ARTHUR PIEPER, Respondent-Appellee.

First District (4th Division)   No. 78-1089

Opinion filed December 13, 1979.

JOHNSON, J., dissenting.

Arthur Rosenblum, of Chicago, for appellant.

Carr & O'Rourke Associates, of Chicago, for appellee.

Mr. JUSTICE ROMITI delivered the opinion of the court:

The petitioner (wife) appeals from a judgment in a suit for divorce filed on August 13, 1975. No objection is made to the finding that the marriage should be dissolved; the sole objections are to the award of property and maintenance. Specifically, the wife contends: (1) that the court erred in ordering the sale of marital property when neither party had asked for partition; (2) that the court erred in failing to consider the husband's contingent right to a police pension upon retirement to be marital property; (3) that the award of temporary maintenance is too small and for too short a period.

We agree that the court erred and reverse and remand the case for further proceedings.

I.

■■ The sole real estate owned by the parties consists of two lots in Wisconsin. One was held in the names of both parties, the other was listed solely in the husband's name. The court, after considering all of the evidence including who had furnished the money for the lots, ruled that both lots were in fact joint property owned in equal shares. The husband has made no objection to this finding, and thus the finding that the wife is

entitled to a one-half interest in the property is final.[1] But the court went further than merely declaring that the Wisconsin property was owned jointly in equal shares. Despite the fact that neither party had prayed for partition, it ordered that the property be sold and the net proceeds be divided in equal shares between the parties. This was error. As the court stated in *Blazina v. Blazina* (1976), 42 Ill. App. 3d 159, 163-64, 356 N.E.2d 164, 168:

"Neither party hereto prayed for a partition or for a sale of the jointly owned marital home. This court's holding in *Nugent v. Nugent*, 9 Ill. App. 3d 702, clearly outlined the circumstances under which a trial court can order a sale of a jointly owned marital home. There is no authority to order such a sale except as provided by statute. (*Fowler v. Fowler*, 26 Ill. App. 3d 313, 315; *Persico v. Persico*, 409 Ill. 608, 611.) Since the *Nugent* case was not reported in full we quote extensively:

'We find no basis for the court's order of sale of the jointly held property here. Section 20 of the Divorce Act (Ill. Rev. Stat. 1969, ch. 40, par. 21) is inapplicable as it authorizes a sale only to enforce the payment of alimony where it is decreed to be a lien on the property. Nor can the sale be classified as the conveyance of equitable title from one party to another under Section 17 (Ill. Rev. Stat. 1969, ch. 40, par. 18) or the conveyance of property as a settlement in lieu of alimony under Section 18 (Ill. Rev. Stat. 1969, ch. 40, par. 19). Rather, the ordering of the sale under the circumstances here was in the nature of a partition (Ill. Rev. Stat. 1969, ch. 40, par. 17(a)). However, neither party prayed for a partition of the property and each claimed the entire interest in it. The court was therefore without jurisdiction to order the sale of this property. This provision of the decree is reversed.' "

See also *Pettit v. Pettit* (1978), 60 Ill. App. 3d 375, 376 N.E.2d 782; *Maggert v. Maggert* (1978), 65 Ill. App. 3d 758, 382 N.E.2d 701, *appeal denied* (1979), 74 Ill. 2d 586.

*Blazina* was decided under the former divorce act. On October 1, 1977, the new Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 101 *et seq.*) became effective. Section 801(b) (Ill. Rev. Stat. 1977, ch. 40, par. 801(b)), which was held constitutional in *Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 376 N.E.2d 1382, provides

---

[1] The plaintiff on appeal has suggested that all of the Wisconsin property could be awarded to her in lieu of other maintenance. We do not rule on this contention, believing it is more appropriate for the trial court on remand to consider this suggestion. Accordingly, nothing in this opinion should be considered to bar such award should the trial court find it appropriate.

that the act applies to all pending actions and proceedings commenced prior to the effective date with respect to issues on which a judgment has not been entered. It further provides that evidence adduced after the effective date of the act shall be in compliance with it. The judgment in this case dissolving the marriage and dividing the property was entered on March 2, 1978, five months after the new act became effective. Accordingly, it is clear that the new act controls the rights of the parties. *In re Marriage of Olsher* (1979), 78 Ill. App. 3d 627, 397 N.E.2d 488.

Section 503 of the new act (Ill. Rev. Stat. 1977, ch. 40, par. 503) permits the court to allocate marital property, regardless of who holds title, to each spouse in just proportion after considering all relevant factors including, *inter alia*, the contributions of the spouse, the economic circumstances of the spouses, age, health, occupation, other income and whether the apportionment is in lieu of or in addition to maintenance. But as we stated, the trial court's action was more than the simple allocation of property or an award to the wife in lieu of maintenance. Rather, as in *Blazina*, the order of the sale of the property with the proceeds to be divided between the parties was in the nature of a partition. Section 17(a) of the old Divorce Act was incorporated into the new act as section 514 (Ill. Rev. Stat. 1977, ch. 40, par. 514), with practically no change in wording. It provides, as it provided before, that the court may upon petition of one of the parties partition real estate. Particularly in light of the fact that the legislature, had it disapproved of the ruling in *Blazina*, could have changed the wording of the section when it adopted the new act, we conclude that the doctrine set forth in *Nugent, Blazina, Pettit* and *Maggert* is still valid.

## II.

■■ The wife's next contention is that the court erred in failing to treat the defendant's pension as marital property and award her a just share. The record discloses that the husband has worked in the Chicago police force throughout the marriage. The wife also worked throughout most of the marriage and at one point claimed she had helped put him through police school. In less than four years the husband can retire from the police force and draw a pension. The court in the divorce decree did not determine the parties' rights to the pension. This we believe to be error.

The husband seeks to uphold the court's failure on two grounds: (1) he claims that the divorce decree was actually drawn up by the plaintiff and (2) that Illinois law, as represented by *Carterfield v. Carterfield* (1976), 39 Ill. App. 3d 525, 350 N.E.2d 491, and *Busby v. Busby* (1973), 11 Ill. App. 3d 426, 296 N.E.2d 585, prevents the wife from sharing in the pension in the absence of any special equities.

As to the first contention, the record does not indicate that the wife's attorney actually drafted the court order and we are not permitted to accept an attorney's statement in his brief as proof of facts not shown in the record. (2 Ill. L. & Prac. *Appeal and Error* §515 (1953).) It is clear from the record that the divorce decree was not reached by settlement of the parties and that the parties did not waive their right of appeal. That the wife claimed to have certain rights in her husband's pension is clearly disclosed in a memorandum which was submitted by the wife to the trial court between the time it announced the findings and the time it rendered its judgment. Also see *In re Marriage of Olsher* (1979), 78 Ill. App. 3d 627, 397 N.E.2d 488.

Second, neither case cited by the husband supports his contention that Illinois law does not permit a spouse to claim any rights in the other spouse's pension in the absence of special equities. *Carterfield* did not involve pension benefits but an inheritance. *Busby* did involve pension benefits. However, while the trial court did not award the wife any part of the pension benefits, this was approved by the appellate court because the present cash value of the plan had been included among the assets of the parties and was awarded to the husband as part of his share of the property division; he was in fact awarded much less than half of the property. Accordingly *Busby* would seem to support the wife's contention that pension benefits must be treated as marital property.

However, both *Carterfield* and *Busby* are irrelevant for the simple reason they involved appeals from judgments decided before October 1, 1977, and thus were governed by the earlier act. As we have already noted this case is governed by the new Marriage and Dissolution of Marriage Act.

Sections 503(a) and (b) of the Marriage and Dissolution Act (Ill. Rev. Stat. 1977, ch. 40, par. 503(a), (b)) provide:

"For purposes of this Act, 'marital property' means all property acquired by either spouse subsequent to the marriage, except the following, which is known as 'non-marital property':

(1) property acquired by gift, bequest, devise or descent;

(2) property acquired in exchange for property acquired before the marriage or in exchange for property acquired by gift, bequest, devise or descent;

(3) property acquired by a spouse after a judgment of legal separation;

(4) property excluded by valid agreement of the parties;

(5) the increase in value of property acquired before the marriage; and

(6) property acquired before the marriage.

(b) All property acquired by either spouse after the marriage

and before a judgment of dissolution of marriage or declaration of invalidity of marriage is presumed to be marital property, regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, or community property. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection (a) of this Section."

Pension benefits are not property acquired by gift, bequest, devise or descent or property acquired in exchange for such property. Rather, pension benefits are part of the consideration earned by the employed spouse for his service. (*In re Marriage of Hunt* (1979), 78 Ill. App. 3d 653, 397 N.E.2d 511; *In re Marriage of Brown* (1976), 15 Cal. 3d 838, 544 P.2d 561, 126 Cal. Rptr. 633.) Accordingly, it is clear that the pension benefits, to the extent they were earned during the marriage, are marital property although they will not actually be paid until after the marriage has been dissolved. *In re Marriage of Musser* (1979), 70 Ill. App. 3d 706, 388 N.E.2d 1289.

The record does not disclose whether the husband's rights to the pension are so vested that he could receive a pension in four years' time even if he left the police force before the expiration of the four years. The husband does not contend, however, that that is pertinent and we agree. (*In re Marriage of Hunt* (1979), 78 Ill. App. 3d 653, 397 N.E.2d 511; *In re Marriage of Brown* (1976), 15 Cal. 3d 838, 544 P.2d 561, 126 Cal. Rptr. 633; *Cearley v. Cearley* (Tex. 1976), 544 S.W.2d 661; *Taggart v. Taggart* (Tex. 1977), 552 S.W.2d 422.) Nor is it unreasonable to treat such benefits as marital property. As stated in I. Baxter, Marital Property §11:2, at 19-20 (Supp. 1977):

"If the premise that modern marriage is a partnership of co-equals is accepted, it follows that homemaker services must be recognized as significant in determining the economic incidents of divorce. Moreover, the distinction between separate and joint property breaks down and the category of marital property becomes enlarged. In other words, the 'kitty' available for equitable distribution upon divorce may include all property accumulated during the marriage, no matter how title is held, subject to the equities of the particular case. Moreover, that which is deemed to be 'property' or a family asset may be subject to redefinition.

The most timely issue regarding the economics of divorce is the question of spousal claims to an interest in retirement or pension benefits of the other spouse. In the typical situation, the husband through employment or military or governmental service has

acquired a potential retirement or pension benefit during the marriage. Moreover, the employee's interest in the benefits may or may not have 'vested' or 'matured' at the time of the divorce, depending upon the length of service and the established conditions of eligibility.

The homemaker in our typical situation claims that but for her services the family breadwinner would not have been free to concentrate on his career and to earn his salary and to acquire fringe benefits, and that in any event it was all a part of a partnership effort. She should not be penalized, she says, for merely having performed her assignment under the agreed upon division of labor within the family. She is entitled to her fair share of the assets produced during the marriage, which includes a proportionate share of the benefits received from her husband's employment during the marriage.

The homemaker's contention becomes crucial where the parties have lived up to their income but have accumulated little property and a retirement or pension benefit may be the greatest thing of value produced by the marital partnership. If the husband's interest in that benefit is not considered by the divorce court, the 'kitty' will be a weak kitten. Moreover, it is not answer to say that the retirement or pension benefit may be reckoned with in setting alimony although it is not to be regarded as 'property.' Alimony, as we know, is a 'sometime thing.' It ordinarily ceases upon death or the obligee's remarriage. It is difficult to collect in many instances and arrearages tend to be reduced if not forgiven.

More important, in our typical case, the wife has a just claim to a share of the benefit derived from joint contributions, albeit her contributions were of a different order. She already has earned her right to a share and paid for it with her past services. Thus she has a present accrued interest, not a contingent claim such as is involved in alimony.

\* \* \*

In addition to the individual merits of spousal claims to an interest in retirement and pension benefits, sound social policy and the facts of modern life dictate a recognition of the claim on a public interest basis. To date, inadequate attention has been given to the plight of elderly women, 50 percent of whom live on under $1800 a year. In March, 1974, the median income of women over 65 was $2,119 per year, as compared with a $4,106 median for elderly men. A pro rata interest in a former husband's pension or retirement benefits would improve the financial situation of at least some elderly women who have been divorced. Such might occur if she

regularly obtains her share of benefit payments when made or if upon divorce the value of the benefit is capitalized and she is given a lump sum which may be used as a nest egg to provide greater security for the years ahead. It also is relevant that the divorce rate for the elderly has at least doubled during the recent divorce epidemic."

Accordingly, upon remand, the trial court must divide the marital property, including the right to the pension, allocating it in just proportions after having considered all of the factors set forth in section 503(c) of the act. *In re Marriage of Hunt* (1979), 78 Ill. App. 3d 653, 397 N.E.2d 511; *In re Marriage of Musser* (1979), 70 Ill. App. 3d 706, 388 N.E.2d 1289.

## III.

The wife's third complaint is that the trial court failed to consider the criteria set forth in the statute in awarding the wife maintenance for two years and that the sum awarded is inadequate both in amount and period.

The evidence discloses that the husband is a sergeant of police whose net take-home pay is $1,228 a month. His living expenses are several hundred dollars less. He will shortly be able to retire on a pension which will be paid as long as he lives.

The husband and the wife have been married for more than 17 years. She was, at the time of trial, nearly 46 years old. While she worked most of the years of her marriage, educationally she only completed the first year of high school. The only business training she has had is as an electrical inspector, which apparently was her last job. She has no specific skills. The plaintiff was laid off from her last job in 1975. That job involved heavy lifting. While she was not laid off from her job because of health, she indicated she was not now physically capable of doing the work she had been doing. She has back problems for which she has seen a chiropractor. On the other hand there was testimony that she helped her brother renovate their mother's house although her assistance seems to have consisted of holding the panelling while he worked on it. She also indicated that her health was better than it has been.

The wife further testified that since 1975 she has attempted, unsuccessfully, to find employment. She has had to borrow $900 from her mother upon which to live. She had no other source of income except for the loan. The trial court awarded the wife as maintenance $330 per month for the first six months; $290 per month for the next six; $250 per month for the six after that and $225 per month for the last six.

The court in making the award stated:

"Alimony, for long periods of time, in my opinion, are warranted

where the wife is tied down raising children and, therefore, she cannot educate herself and make herself—put herself in a position where she can go out and get a job. That is not the situation here. This lady worked until 1975 and she was earning a living for herself and she was contributing, in my opinion, at least a good portion of her salary towards the upkeep of this house.

The husband did nothing to really inhibit her. This is a marriage that appeared that was convenient for both parties. And in today's liberal situation between husband and wife, I don't feel that the husband should be tied down for any extended period of time with alimony payments.

However, she is unemployed at the present time and she has to survive. She has to be given some opportunity to find herself a job, if she can work, and go to work.

It is my opinion, based on the evidence, she is capable of holding down a job, perhaps not the kind of job she had before where she was lifting heavy objects, but certainly if she can go out and help build and construct rooms and remodel rooms, she is able to physically go out and hold down some kind of job that would not require strenuous labor.

\* \* \*

So, over two years he's going to support her at least to some extent. Now, in preparing yourself for work, there is no reason why you should not be able to also find some type of employment. Taking courses in typing and that kind of thing normally does not require a person to be in school for a full time—for the entire two years. And that is a problem that Mrs. Pieper is going to have to work out."

Section 504(b) of the Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 504(b)) provides that once the court determines that maintenance should be awarded:[2]

"(b) The maintenance order shall be in such amounts and for such periods of time as the court deems just, without regard to marital misconduct, after consideration of all relevant factors, including:

(1) the financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(2) the time necessary to acquire sufficient education or

_____

[2] The defendant has not cross-appealed from the trial court's determination that maintenance should be awarded. Accordingly that determination is final.

training to enable the party seeking maintenance to find appropriate employment;

(3) the standard of living established during the marriage;

(4) the duration of the marriage;

(5) the age and the physical and emotional condition of both parties; and

(6) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance."

It is clear from the record that the trial court in determining the amount and duration of maintenance did not consider such factors as the financial resources of both parties, the duration of the marriage, the age of the parties and the standard of living established during the marriage. In relation to the last factor we note with approval that Oregon under a similar statute has ruled that:

"While each case must be decided on its own facts and no formula can be stated, certain principles emerge from an examination of the above cases. The most significant factor usually is whether the wife is employable at an income not overly disproportionate from the standard of living she enjoyed during the marriage. The wife's employability includes consideration of her education, training, experience, age, health, capacity, whether she has custody of small children, etc. Length of the marriage is germane because the longer the marriage, the more likely it is that the wife has foregone employment experiences, the absence of which will make it more difficult for her to achieve employment and self-sufficiency. If the wife is employable at an income not overly disproportionate from the standard of living she enjoyed during marriage, then, generally speaking, if support is appropriate it should be for a limited period of, for example, one to three years. In such a situation, it is not the policy of the law to give the wife an annuity for life or, stated differently, a perpetual lien against her former husband's future income. Conversely, if the wife is not employable or only employable at a low income compared to her standard of living during marriage then, generally speaking, permanent support is appropriate."

*In re Marriage of Kitson* (1974), 17 Or. App. 648, 655-56, 523 P.2d 575, 578-79, quoted with approval in *In re Marriage of Grove* (1977), 280 Or. 341, 347-48, 571 P.2d 477, 482-83, *modified* (1977), 280 Or. 769, 572 P.2d 1320. See also *In re Marriage of Rosan* (1972), 24 Cal. App. 3d 885, 101 Cal. Rptr. 295.

■ The rationale set forth in *Kitson* and *Grove* is not necessarily inapplicable in this case merely because the wife worked during most of

the marriage. We note that it appears from the record that the wife worked at jobs that did not require the development of any particular skills, and she did not, perhaps because of her duties at home, attempt to train herself for a career. We are not saying that the trial court must follow the *Grove* rationale and award permanent maintenance in this situation; we do say, however, that this is one of the factors which the trial court must take into consideration in making the award.

▪ We consider the court's award of maintenance for only a two-year period from another viewpoint. As appears from the excerpts of the record set forth in the opinion, the trial court seems to have chosen to award maintenance for a two-year period on the assumption that by the end of the two-year period the wife would have a job and be able to support herself. But there is nothing in the record to support this assumption. While the statute specifically grants the trial judge authority to make awards of limited duration, such awards should not be based on speculation as to the future conditions of the parties. (*In re Marriage of Powers* (Mo. App. 1975), 527 S.W.2d 949.) As stated by the court in *In re Marriage of Rosan* (1972), 24 Cal. App. 3d 885, 897, 101 Cal. Rptr. 295, 303-04:

> "Based on the evidence before the court, the real ability of Wife to support herself is completely unknown and a matter of speculation. Considering her lack of experience and training and the many years she has been out of the labor market, the ability of Wife to support herself on a standard approaching the customary living standard of the parties is uncertain. By making an order terminating all spousal support at the end of three years without reserving jurisdiction to extend the period, the trial court put it out of its power to provide any support whatever for Wife after three years even if it should prove after maximum effort on her part she is unable to support herself in a reasonable fashion ° ° °. Under the circumstances of this case that was an abuse of discretion.
>
> We can only surmise that the genesis of this order was some notion that enactment of The Family Law Act constituted some sort of mandate by the Legislature to the courts to relieve husbands of any long, continuing obligation for spousal support. If this be true, we are constrained to state that this notion is mistaken."

See also *Lindsay v. Lindsay* (Ariz. App. 1977), 115 Ariz. 322, 565 P.2d 199.

The award must be made upon the basis of circumstances disclosed by the evidence at the time of the award. *Jacobs v. Jacobs* (1979), ___ Va. ___, 254 S.E.2d 56.

Obviously, the court may modify its award of maintenance as the spouses' circumstances change, either by increasing or decreasing the amount. (Ill. Rev. Stat. 1977, ch. 40, par. 510(a).) But it should not award

alimony for a limited period without some evidentiary basis to support that award, and upon what appears to be pure speculation that at the end of the period the spouse will be able to support herself.

Accordingly, that part of the judgment of the trial court ordering the sale of the Wisconsin property, awarding maintenance of $6,570 over a two-year period and failing to consider the rights in the pension plan as marital property is reversed and the cause is remanded for further proceedings in accordance with this opinion.

Reversed in part and remanded.

JIGANTI, P. J., concurs.

Mr. JUSTICE JOHNSON, dissenting:

I dissent from that part of the majority opinion which concerns itself with ordering of the sale of marital property. The majority opinion holds that no court may order the sale of jointly owned marital property if neither party has prayed for partition. While that holding may accurately reflect the statute, it does not address the circumstance of this case. Section 514 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 514), in effect, provides jurisdiction in the court of dissolution over actions for partition that may arise during a divorce proceeding. The purpose of the provision is to eliminate the additional litigation in trial courts that would otherwise arise from marriage disputes. As a matter of procedure, parties seeking to avail themselves of the provisions of section 514 must comply with the requirement of including a prayer for partition in their pleadings. Complaints that do not meet the pleading requirements are, of course, insufficient. However, it should be noted that in view of the merger of law and equity, notwithstanding the division of the court to which a judge is assigned, a trial judge has jurisdiction to grant whatever remedy may be appropriate in the circumstances of the case before him. This view is supported by section 34 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 34) which provides that "[e]xcept in case of default, the prayer for relief does not limit the relief obtainable * * *." The court in this case, and not the parties, is seeking to avail itself of a remedy which is in the nature of partition. The majority would confuse the section 514 provisions with the power of the trial court to achieve a just and equitable distribution of property. The basic premise of this dissent is that the trial court in dissolutions of marriage should be able to exercise its discretion in order to secure such a result. The resolution of the property distribution should only be limited by reason, and any such judgment should not be disturbed unless an abuse becomes apparent.

The majority opinion points to the cases of *Blazina v. Blazina* (1976), 42 Ill. App. 3d 159, 356 N.E.2d 164, and *Nugent v. Nugent* (1973), 9 Ill. App. 3d 702, 292 N.E.2d 917. Although both cases involve statutory provisions that predate but are identical to section 514, they can be distinguished from this case in one crucial respect. In the cases cited by the majority, the allocation of property interests is disputed by the parties. Such is not the circumstance in our case. The trial court ruled that both Wisconsin lots were, in fact, joint property, owned in equal shares. That allocation of interest made by the court was not disputed by the parties. Instead, it is the fact that this specific property was not left undivided which causes such concern and gives rise to this appeal. It is noted with great interest that the appellant has suggested on appeal that the Wisconsin property could be awarded to her in lieu of maintenance. There is an irresistible tendency in dissolutions of marriage for the parties to pursue the properties which are attractive for their potentially appreciable value.

The majority opinion goes on to discuss section 503 of the Act (Ill. Rev. Stat. 1977, ch. 40, par. 503), which instructs the trial court to take all relevant factors into consideration when making an allocation of property. I would further suggest that when a consideration has been made it is the duty of the court to take measures in its final order that will secure the fruition of the allocation. In this case, the appellant had worked throughout most of the marriage, but she was unemployed at the time of the hearing and represented that she had limited skills. As well, neither party proposed to the court a plan to manage the property upon dissolution of the marriage. The just and equitable path for the court to follow was the ordering of a sale of the property with an equal distribution of the net proceeds. That left both parties in a position to continue their lives free from entangled financial affairs and without having to face financial hardship in order to maintain their respective allocations of the property.

Additionally, it is foreseeable, under the rationale of the majority, that there may occur instances where the trial court is handcuffed in its attempt to resolve property distributions because one or both parties are financially incapable of supporting their allocated interests in marital property. Where there is a showing, of an inability on the part of one or both parties to support their interest in the property, and those interests are not in dispute, the ordering of sale of the asset followed by distribution of the net proceeds is advisable. Where a just and equitable division of the marital property would be impaired without a sale and distribution of net proceeds, an order in the nature of partition is appropriately within the discretion of the trial court.

For these reasons, I must respectfully dissent from the majority opinion.