*In re* MARRIAGE OF GERALD R. RIMMELE, Petitioner-Appellee, and KATHLEEN A. RIMMELE, Respondent-Appellant.

Third District    No. 81-69

Opinion filed December 7, 1981.

Gray, Kleczek & Kielian, P. C., of Joliet, for appellant.

John F. Cirricione, of Cirricione, Block, Krockey & Cernugel, P. C., of Joliet, for appellee.

JUSTICE STOUDER delivered the opinion of the court:

Petitioner Gerald R. Rimmele filed a petition for dissolution of his marriage to respondent Kathleen A. Rimmele. After the denial of respondent's petition for temporary allowance, the cause proceeded to a bifurcated hearing in the circuit court of Will County. Respondent appeals from the judgment of the court regarding the disposition of marital property and the denial of maintenance and attorney's fees.

The Rimmeles were married in 1970 and have no children. Petitioner, 37, is in good health and is employed by Amaco Chemical Company, where he earns approximately $24,000 a year as a maintenance mechanic. Respondent, 30, is epileptic and had been employed for a short while by the International Order of Foresters, where she had earned nothing as a commission salesperson. Petitioner has been employed by Amaco for 13 years, while respondent has only worked sporadically for minimal wages. Her most recent employment prior to separation was a $2.60-per-hour clerk at a donut shop. Additional facts will be discussed in conjunction with the issues to which they are germane.

Regarding the disposition of marital property, respondent advances two contentions. She initially contends that the trial court erred in its valuation of the property, and subsequently contends the court erred in its percentage distribution and manner of payment.

Respondent's contention of error regarding the valuation of marital property concerns petitioner's pension and stock option plans. Considering first the valuation of the pension plan, the trial court's task was to determine its present value. (See *In re Marriage of Hunt* (1979), 78 Ill. App. 3d 653, 662, 397 N.E.2d 511, 519.) The parties stipulated to present values at discount rates ranging from 5% to 12%. The court elected to use the figure corresponding to 8%, and respondent argues 5% would produce a more accurate valuation.

Any discussion of the approaches to the selection of a discount rate for purposes of calculating present value would be unsupported by the

record, as would econometric forecasts of interest rates for the relevant period. Under these circumstances, and considering the long-term secular trend of interest rates, we find no basis for characterizing the court's decision as error.

Considering next the valuation of petitioner's profit-sharing plan, the trial court arrived at a net value of the plan after allowing for petitioner's incremental income tax liability. This liability was triggered when petitioner unilaterally withdrew over $28,000 from the plan which, after setting aside $10,000 for taxes, he used to gamble, take a weekend trip, and purchase a vehicle for his brother. Respondent argues that, under these circumstances, the tax liability should not have been deducted from marital property.

■■ *In re Marriage of Emken* (1981), 86 Ill. 2d 164, 427 N.E.2d 125, considered the appropriateness of reducing the value of marital property by the amounts which the respondent would be required to pay in income tax on a Keogh plan if he were to terminate it, and the penalties which would be sustained in the event certificates of deposit were withdrawn before maturity. The court stated that "[t]here is no evidence in this record that either action was made necessary by reason of the judgment entered in this case." (*In re Marriage of Emken* (1981), 86 Ill. 2d 164, 167, 427 N.E.2d 125.) It concluded that it was improper to reduce the valuation in anticipation of the possible losses. While the tax liability herein is an established reality, it likewise was not occasioned by the judgment in this cause; moreover, it was the result of unnecessary unilateral action. Respondent did not share in the fruits of the withdrawal, and we find, under these specific circumstances, she should not share in paying its concomitant incremental tax liability. As this cause must thus be remanded, we direct the trial court to include the entire amount of the withdrawal as marital property.

Respondent's second contention regarding the disposition of marital property is that the trial court erred in awarding her one-third of the marital estate, payable by petitioner at the rate of $100 per week. The court further ordered that the initial 104 payments be payments of principal only, thus extending to petitioner an interest-free loan of respondent's share of marital property.

The disposition of marital property is governed by section 503(c) of the Illinois Marriage and Dissolution of Marriage Act (hereinafter the Act) (Ill. Rev. Stat. 1979, ch. 40, par. 503(c)), which provides, *inter alia*, that the court "shall divide the marital property without regard to marital misconduct in just proportions considering all relevent factors, including:

> (1) the contribution or dissipation of each party in the acquisition,
> preservation, or depreciation or appreciation in value, of the

marital and non-marital property, including the contribution of a spouse as a homemaker or to the family unit;

(2) the value of the property set apart to each spouse;

(3) the duration of the marriage;

(4) the relevant economic circumstances of each spouse when the division of property is to become effective * * *;

* * *

(7) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties;

* * *

(9) whether the apportionment is in lieu of or in addition to maintenance; and

(10) the reasonable opportunity of each spouse for future acquisition of capital assets and income."

In the case at bar, the court balanced petitioner's contributions, financial and to the family unit, with respondent's contribution as a homemaker in a childless home. Neither party received any nonmarital property, and the duration of the marriage was 10 years. The parties' relative economic circumstances were that respondent was to receive a stream of cash payments, while petitioner would retain almost all remaining marital assets and liabilities, including the furnished marital home and its mortgage. Respondent's health was below average and her skills and employability marginal, while petitioner's situation was positive in these areas. The apportionment is apparently in lieu of maintenance, and the opportunity to acquire future assets and income is good for petitioner, but poor for respondent.

■■ It is clear the Act does not require an equal division of marital property. (*In re Marriage of Aschwanden* (1980), 82 Ill. 2d 31, 411 N.E.2d 238.) Based upon this fact and our review of the facts and circumstances herein, we find no abuse of discretion in an award of one-third of the marital property. We must note, however, that respondent received, not the awarded third of the property, but a seven-year-old automobile that did not run and a stream of cash. The record reveals ownership of no other assets. While a stream of payments might well be appropriate in another situation, we find the court abused its discretion in this cause. We therefore direct the court to order a lump-sum distribution to respondent, reflecting the marital property she has already received.

Respondent next contends that the trial court erred in failing to award her maintenance. The granting of maintenance is governed by section 504(a) of the Act (Ill. Rev. Stat. 1979, ch. 40, par. 504(a)), which provides, *inter alia*:

"In a proceeding for dissolution of marriage * * * the court may grant a maintenance order for either spouse, only if it finds that the spouse seeking maintenance:

(1) lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs, and

(2) is unable to support himself through appropriate employment * * * or

(3) is otherwise without sufficient income."

While the Act does not define "reasonable needs," one benchmark is whether an award is sufficient to maintain the spouse seeking maintenance in the standard of living established during the marriage. *In re Marriage of Simmons* (1980), 87 Ill. App. 3d 651, 409 N.E.2d 321; *In re Marriage of Pieper* (1979), 79 Ill. App. 3d 835, 398 N.E.2d 868; *Shive v. Shive* (1978), 57 Ill. App. 3d 754, 373 N.E.2d 557, *appeal denied* (1978), 71 Ill. 2d 606.

■■ In the case at bar, the parties enjoyed a modest but comfortable standard of living. They lived in a series of homes which they owned and accumulated significant assets, considering their income. At the time of hearing, respondent had no earnings and no individual assets, income producing or otherwise. Her ability to support herself through appropriate employment is dubious for lack of skills and good health. We therefore find the court abused its discretion in denying respondent maintenance. On remand we direct the court to grant maintenance in such amount and for such a period of time as it finds equitable in light of our other holdings herein.

Respondent last contends the trial court erred denying her request for attorney's fees. The granting of attorney's fees is governed by section 508(a) of the Act (Ill. Rev. Stat. 1979, ch. 40, par. 508(a)), which provides, *inter alia*:

"The court * * * after considering the financial resources of the parties, may order either spouse to pay a reasonable amount * * * for the costs and attorney's fees necessarily incurred by the other spouse * * *."

For the reasons heretofore set forth in our previous discussion, we find the trial court abused its discretion in denying respondent attorney's fees. We therefore direct the court to order said fees to be paid by petitioner, and respondent accordingly reimbursed.

Accordingly, the judgment of the circuit court of Will County is affirmed in part, reversed in part, and remanded with directions.

Affirmed in part, reversed in part, and remanded with directions.

ALLOY and BARRY, JJ., concur.