*In re* MARRIAGE OF THERESA R. CAMPISE, Petitioner-Appellant, and JASPER J. CAMPISE, Respondent-Appellee.

First District (2nd Division)   No. 82—1959

Opinion filed June 21, 1983.

Karaganis & Gold, of Chicago (Charles J. Pesek, of counsel), for appellant.

Kalcheim & Kalcheim, Ltd., of Chicago (Ilene E. Shapiro, of counsel), for appellee.

JUSTICE PERLIN delivered the opinion of the court:

Petitioner, Theresa R. Campise (Theresa), instituted a dissolution of marriage action against respondent, Jasper J. Campise (Jasper), on October 24, 1978. On August 21, 1981, the trial court dissolved the marriage. On June 3, 1982, the court awarded temporary maintenance to Theresa and apportioned the marital property. On appeal, Theresa contends that the trial court abused its discretion in determining the amount and duration of maintenance; that the court failed to apportion fairly the marital property; and that the court should have awarded her offsetting marital property in lieu of an interest in Jasper's pension benefits. For the reasons hereinafter stated, we reverse the judgment of the trial court and remand for further proceedings.

Theresa and Jasper were married on October 31, 1954. Their marriage produced three children all of whom are now adults. At the time their marriage was dissolved, the Campises owned a residence in Phoenix, Arizona, which had been appraised at $118,700 when Theresa tried to sell the property sometime in 1979 or 1980. At the June 3, 1982, property hearing, Theresa, who lives in the Phoenix residence, estimated that the house was now worth $125,000; Jasper, who resides in Chicago, estimated the current market value was $130,000. There was an outstanding balance on the residence of approximately $32,000. According to Theresa, the furniture and furnishings in the home were worth $1,500.

The Campises purchased a parcel of vacant real estate in New Mexico for $2,100 but stipulated that as of the June 3, 1982, hearing

the market value of this property was unknown. The Campises also owned common stock valued at $5,450. Theresa's attorney held in escrow $949, which sum represented the parties' income tax refund for 1978, and Theresa possessed $2,000 to $3,000 in jewelry.

As of June 3, 1982, Jasper, a Chicago police officer for more than 30 years, was eligible to retire from the department and receive a pension from the Policeman's Annuity and Benefit Fund. Arthur Harris Tepfer, a consulting actuary who was a witness for Theresa and was familiar with Jasper's pension rights, testified that Jasper's interest in the pension was 100% vested, *i.e.*, nonforfeitable. Both Jasper and Tepfer testified that Jasper could not elect to receive a lump sum payout of his pension benefits in lieu of monthly payments. Jasper also testified that he could not assign his right to receive benefits or use his anticipated benefits as collateral for any purpose. The exact amount of the pension benefit Jasper will receive depends on the date of his retirement and whether he is then married.

The parties stipulated that Jasper had to his credit in the pension fund $28,036.49, which represented the annuity and benefit fund deductions from November 1, 1954, the day after the Campises were married, to February 15, 1982. (The record does not establish the significance of this latter date.) The Campises also stipulated that as of June 1, 1982, Jasper would be eligible to receive a monthly pension payment of $1,335.78 if he retired. Using that figure, Tepfer estimated that the "lump sum actuarial equivalent present value" of Jasper's accrued benefit rights as of June 1, 1982, was $222,785.93. According to Tepfer, the "lump sum actuarial equivalent present value" is an actuarial concept representing the value of a particular series of payments converted into present-day dollars.

At the time of the June 3, 1982, property hearing, Theresa, age 51, was a high school graduate with no further educational or technical training. Theresa had been employed as a secretary until 1969, but she testified that she could not now work as a secretary unless she received additional secretarial training. She also testified that she stopped working in 1969 on the advice of her physician and that she presently is unable to work because she suffers medical problems with her back and neck which prevent her from sitting in one position for any extended period of time. Theresa undergoes physiotherapy several times a week and she also consults a psychiatrist, a neurologist and an orthopedist. Theresa takes regular medication.

Theresa testified that her monthly expenses were approximately $1,440 and that she has no source of income other than the $875 due from Jasper every month under an April 17, 1979, temporary mainte-

nance award. She uses $375 of that amount for the monthly mortgage payments on the Phoenix residence and the balance of $500 goes towards her living expenses. In order to meet those expenses, Theresa was compelled to borrow money from her parents and to spend the proceeds from a $5,000 personal injury settlement she had received. Theresa owned no stocks or bonds in her own name and she had approximately $300 in her checking account.

Jasper, age 54, testified that he worked full time as a Chicago police officer and also worked part time for the National Broadcasting Company. His net monthly income from both jobs was $2,094 and his monthly expenses, including his obligations under the temporary maintenance award, were $1,954. On December 20, 1980, Jasper suffered a heart attack and was still receiving therapy at a local hospital as of June 3, 1982.

At the conclusion of the property hearing, the trial court found that despite her various medical problems and the fact that she had not worked for some time, Theresa nevertheless had the ability to work. The court awarded her $500 per month in temporary maintenance for a period of five years. Theresa also received the New Mexico real estate, all personal property in the Phoenix residence, half of the money held in escrow and $534 per month from Jasper's pension whenever Jasper retired. The $534 represents 40% of the $1,335.78 monthly benefit Jasper would be entitled to receive if he had retired on June 1, 1982. Jasper was awarded all of the common stock, the balance of his pension, the remaining half of the escrow fund and all personal property in his possession.

The trial court ordered that the Phoenix residence be placed on the market for sale within 30 days after the judgment for dissolution was entered. Jasper was directed to continue making the mortgage payments until the residence was sold. Following the sale, Jasper would be credited for the principal portion of all mortgage payments made by him since August 21, 1981, the date on which the court dissolved the marriage, and the balance of the proceeds would be divided equally between the parties. Theresa had exclusive possession of the Phoenix residence until it was sold. A written order conforming to the court's findings and division of marital property was entered on July 6, 1982, from which Theresa appeals to this court. The order requiring sale of the Phoenix residence was stayed pending the disposition of this appeal.

■ Theresa first contends that the trial court abused its discretion in determining the amount and duration of maintenance. Once the trial court has ascertained that maintenance is appropriate, a find-

ing which is not challenged here, it must consider the following factors in fixing the duration and amount of maintenance:

"(1) the financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently ***;

(2) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) the standard of living established during the marriage;

(4) the duration of the marriage;

(5) the age and the physical and emotional condition of both parties; and

(6) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance." Ill. Rev. Stat. 1981, ch. 40, par. 504(b).

Theresa asserts that the trial court should not have limited the maintenance award to five years. The court limited the period of maintenance because it found that Theresa was able to work. While section 504 of the Illinois Marriage and Dissolution of Marriage Act empowers a trial court to make awards of limited duration, such awards should not be based on speculation as to the future conditions of the parties. (*In re Marriage of Pieper* (1979), 79 Ill. App. 3d 835, 845, 398 N.E.2d 868.) From the record before us, Theresa's age, lengthy marriage, poor health, educational background, lack of special skills, and long absence from the labor market indicate that she is not employable now or in the foreseeable future. The trial court's finding that Theresa was able to work appears to have been predicated on speculation as to her future employability. We therefore conclude that the court erred in limiting the maintenance award to a period of five years.

■ We do not, however, agree with Theresa's contention that she should have been awarded permanent maintenance. Although there is evidence that Theresa presently suffers from health problems which prevent her from working, there appears to be no evidence that these problems are permanent. In our opinion, the trial court on remand should reserve jurisdiction over the maintenance award for the five-year period and at that time reevaluate the need for an award of further maintenance. This approach adds flexibility to the trial court's order because the ultimate duration of the award will be based upon the parties' actual circumstances and not upon speculation as to what those circumstances might be. *In re Marriage of Asch* (1981), 100 Ill. App. 3d 293, 297-98, 426 N.E.2d 1066; *In re Marriage of Rothbardt*

(1981), 99 Ill. App. 3d 561, 568-69, 425 N.E.2d 1146.

Theresa also argues that the amount of maintenance awarded ($500) is insufficient to allow her to maintain her standard of living and that Jasper could afford to pay her more while still maintaining his own standard of living. This argument is related to Theresa's contention concerning the duration of maintenance and thus should be reconsidered by the trial court on remand. We note, however, that in calculating her monthly expenses, Theresa includes the monthly mortgage payments on the Phoenix residence, which are paid by Jasper, but excludes the same item in computing Jasper's expenses.

■ Theresa next contends that the trial court abused its discretion in the overall distribution of marital property. The touchstone of proper apportionment is whether a directed distribution is equitable in nature. (*In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 1132, 398 N.E.2d 126.) In allocating marital property, the trial court must consider all relevant factors which, in this case, include:

"(1) the contribution or dissipation of each party in the acquisition, preservation, or depreciation or appreciation in value, of the marital and nonmarital property, including the contribution of a spouse as a homemaker or to the family unit;

(2) the value of the property set apart to each spouse;

(3) the duration of the marriage;

(4) the relevant economic circumstances of each spouse when the division of the property is to become effective ***;

* * *

(7) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties;

* * *

(9) whether the apportionment is in lieu of or in addition to the maintenance; and

(10) the reasonable opportunity of each spouse for future acquisition of capital assets and income." Ill. Rev. Stat. 1981, ch. 40, par. 503(c).

After carefully reviewing the record, we are of the opinion that the trial court erred in the apportionment of the marital property. Theresa's age, lengthy marriage, poor health, educational background, lack of vocational skills and 14-year absence from the labor market strongly suggest that she is presently unable to maintain the standard of living she enjoyed while she was married. Jasper, on the other hand, has both full time and part time employment and therefore has a greater opportunity to acquire capital assets and income. In light of

each party's relative economic circumstances, we conclude that Theresa did not receive an equitable share of the marital property. We therefore remand the cause for reconsideration of the property distribution award.

Finally, Theresa contends that the trial court erred in awarding to her a deferred distribution of Jasper's pension benefits. In Illinois, pension rights, whether matured, vested or nonvested, contributory or noncontributory, are property under section 503 of the Illinois Marriage and Dissolution of Marriage Act. Ill. Rev. Stat. 1981, ch. 40, par. 503; *In re Marriage of Hobbs* (1982), 110 Ill. App. 3d 451, 455, 442 N.E.2d 629; *In re Marriage of Pieper* (1979), 79 Ill. App. 3d 835, 840, 398 N.E.2d 868.

In *In re Marriage of Hunt* (1979), 78 Ill. App. 3d 653, 397 N.E.2d 511, this court considered at length the proper allocation of pension benefits:

"The trial court can in some cases determine, by actuarial evidence, the present value of [a pension] at the time of [the dissolution of the marriage]. [Citation.] The amount of the pension *** included as marital property would then be the present value of the pension multiplied by a fraction whose numerator is the number of years (or months) of marriage during which benefits were being accumulated, and whose denominator is the total number of years (or months) during which benefits were accumulated prior to the [dissolution]. Once the trial court has determined the present value of that part of the pension *** which is marital property, the trial court may award the interest to the employee spouse and give the nonemployee spouse other marital property to offset her marital share in the interest. [Citation.]

In those instances where it is difficult to place a present value on the pension *** due to uncertainties regarding vesting or maturation, or when the present value can be ascertained but the type, or lack, of other marital property makes it impractical or impossible to award sufficient offsetting marital property to the nonemployee spouse, then the trial court in its discretion may award each spouse an appropriate percentage of the pension to be paid 'if, as and when' the pension becomes payable. [Citations.] The marital interest in each payment will be a fraction of that payment, the numerator of the fraction being the number of years (or months) of marriage during which benefits were being accumulated, the denominator being the total number of years (or months) during which benefits were ac-

cumulated prior to when paid. The trial court, when using this method of allocation, will retain jurisdiction and award the nonemployee spouse some percentage of the marital interest in each payment. [Citations.]" *In re Marriage of Hunt* (1979), 78 Ill. App. 3d 653, 663, 397 N.E.2d 511.

■ From the record, it appears that in the instant case there is insufficient offsetting marital property to award to Theresa in lieu of an interest in Jasper's pension rights. At oral argument, however, Theresa's counsel informed this court that Theresa was willing to waive her rights in Jasper's pension in return for the Phoenix residence. We believe that the trial court should give serious consideration to this offer when, on remand, it reconsiders the property distribution.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause is remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded.

DOWNING, P.J., and STAMOS, J., concur.