# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### December 12, 2001 Session

## CURTIS MICHAEL DANIELS v. MARY FREELS DANIELS

### Appeal from the Circuit Court for Rhea County
### No. 20297, Thomas W. Graham, Judge

### FILED APRIL 23, 2002

### No. E2001-00605-COA-R3-CV

This appeal from the Circuit Court of Rhea County questions whether the Trial Court erred in failing to award Ms. Daniel any portion of Mr. Daniel's retirement benefits, whether the Trial Court erred in dividing the marital estate, and whether the Trial Court erred in failing to award Ms. Daniels rehabilitative alimony. We affirm the judgment of the Trial Court in part and reverse in part.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part; Cause Remanded

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and D. MICHAEL SWINEY, JJ., joined.

Selma Cash Paty, Chattanooga, TN, for the Appellant, Mary Freels Daniels

Howard L. Upchurch, Pikeville, TN, for the Appellee, Curtis Michael Daniels

### OPINION

This is an appeal from a divorce between Curtis Michael Daniels, the Appellee, and Mary Freels Daniels, the Appellant. Ms. Daniels appeals the decision of the Rhea County Circuit Court and presents for our review three issues which we restate:

1. Whether the Trial Court erred in failing to award Ms. Daniels any share of Mr. Daniels TVA retirement and pension benefits.

2. Whether the Trial Court erred in dividing the marital assets.

3. Whether the Trial Court erred in failing to award Ms. Daniels rehabilitative alimony.

We affirm the decision of the Trial Court in part, vacate in part and remand for such further proceedings, as may be necessary, consistent with this opinion.

The parties were married July 14, 1973 and separated July, 1998. There are no minor children of this marriage. Mr. Daniels filed his complaint for divorce on March 12, 1999 alleging inappropriate marital conduct. Ms. Daniels filed an answer and counter-complaint on April 1, 1999 alleging that Mr. Daniels was guilty of inappropriate marital conduct. A hearing was held on November 2, 2000 and an order was entered on November 21, 2000 granting Mr. Daniels a divorce as a result of an extra-marital affair admitted to by Ms. Daniels.

In the Order entered on November 21, 2000, the Trial Court determined that the entire estate was marital property and divided it accordingly. With respect to that division, the Trial Court stated the following:

> In making this distribution, the Court makes the following explanations: The wife has been granted property having a value of One Hundred Forty Five Thousand Six Hundred Five and 74/100 ($145,605.74) Dollars and has been assigned debt of Eleven Thousand Six Hundred Fifty-Four and 94/100 ($11,654.94) Dollars, leaving her a net estate of One Hundred Thirty-Three Thousand Nine Hundred Fifty and 80/100 ($133,950.80) Dollars. The husband has been granted property having a value of Two Hundred Eighty-Nine Thousand One Hundred Eighty-Two ($289,182.00) Dollars against which he is required to assume debt of One Hundred Twenty-Nine Thousand Eight Hundred Fifty-One and 80/100 ($129,851.80) Dollars. The net estate to the husband is One Hundred Fifty-Nine Thousand Three Hundred Thirty and 20/100 ($159,330.20) Dollars. Of this One Hundred Fifty-Nine Thousand Three Hundred Thirty and 20/100 ($159,330.20) Dollars, the amount of One Hundred Twenty-One Thousand Five Hundred ($121,5000.00) Dollars in value can be traced directly to a gift from his mother for the purpose of purchasing the Trotter Farm which was quite late in the marriage (1993). This Court believes it inequitable to grant any substantial interest in this farm to the wife for the reasons stated. It should be further noted when this is subtracted from the husband's net marital estate, the husband will realize approximately Thirty-Seven Thousand Eight Hundred Thirty ($37,830.00) Dollars in assets as a result of the marriage while the wife will realize a net estate valued at One Hundred Thirty Three Thousand Nine Hundred Fifty ($133,950.00) Dollars. In consideration of the foregoing and further in consideration that the wife was the legal fault for this divorce and that she is self supporting, this Court does not believe spousal support is warranted, nor does the Court believe it proper to award attorney's fees. In accordance herewith, this marriage is dissolved and the

parties shall sign all proper instruments necessary to transfer the property awarded to each pursuant to this Decree.[1]

Based on this division, Ms. Daniels received 45.7% of the marital property and Mr. Daniels received 54.3% of the assets.

We review the Trial Court's findings of fact *de novo* upon the record of the proceedings below, with a presumption of correctness "unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d); *see also Hass v. Knighton*, 676 S.W.2d 554 (Tenn. 1984). There is no presumption of correctness with regard to the trial court's conclusions of law, and those conclusions are reviewed *de novo. Jahn v. Jahn*, 932 S.W.2d 939 (Tenn. Ct. App. 1996).

## I.

Ms. Daniels appeals the Trial Court's failure to award her any share of Mr. Daniels TVA retirement and pension benefits. Mr. Daniels is an employee of Tennessee Valley Authority (hereinafter referred to as "TVA") where he is an assistant unit operator at Watts Bar Nuclear Plant. Mr. Daniels began his career with TVA in June, 1980. At the time of the trial Mr. Daniels testified that his annual base salary was $49,750.00 and that he generally earns approximately $5,000.00 to $10,000.00 a year over his base salary in overtime pay. Ms. Daniels works full-time for the City of Dayton as a billing clerk and works part-time for Wal-Mart. Her income is approximately $23,000.00 per year from both jobs.

Both Mr. and Ms. Daniels have retirement benefits available through their employers. Ms. Daniels's retirement through the Tennessee Consolidated Retirement System at the time of the divorce was valued at $11,335.74. Ms. Daniels received all of her retirement in the Trial Court's division of the marital property. According to an affidavit of Mr. Robert J. Vaughn, Manager of Retirement Services, Mr. Daniels has a "Fixed Annuity Fund" through TVA with a value on September 14, 2000 of $51,419.36. Mr. Daniels received all of his annuity in the Trial Court's division of the marital property. Additionally, the affidavit sets forth the follwing with regard to an unvested pension available to Mr. Daniels in the event he retires from TVA:

> In addition, if Mr. Daniels retires from TVA after five or more years creditable TVA service, he may be eligible to receive a pension based solely on TVA's contributions to TVARS to which Mr. Daniels makes no contributions. The amount of any pension to which Mr. Daniels may become eligible has not been determined by TVARS and is not contained in any record maintained by Retirement Services.

---

[1] It should be noted that the money given by Mr. Daniels's mother was a gift to both Mr. and Ms. Daniels. The Trotter Farm warranty deed reflects that the property was transferred to both Mr. and Ms. Daniels.

The Trial Court did not address this unvested pension in the November 21, 2001 order.

On December 5, 2000, Ms. Daniels filed a Motion to Alter or Amend wherein she argued *inter alia*, that the Trial Court erred in failing to recognize that Mr. Daniels has both an annuity as well as a pension and that while the Trial Court addressed the annuity, it did not address the pension. In the Order Denying Motion to Alter or Amend, entered on February 16, 2001, the Trial Court stated:

> From all of which it appeared to the Court that Defendant's Motion should be denied except to the extent that may be necessary to clarify the Court's disposition of those unvalued TVA pension rights which are apparently conditioned upon future events. The Court has carefully reviewed the distribution of property heretofore contained in the Decree of November 21, 2000. Based on this review, the Court finds that the Defendant has received an equitable distribution which is already favorably balanced in her behalf. The Court finds that it would be inequitable, given the property and debt distribution already made, for the Defendant to receive any rights in and to Plaintiff's TVA pension. In accordance herewith, IT IS ORDERED: 1) Defendant's Motion to Alter or Amend is denied. 2) To the extent there is any question with regard to the Plaintiff's TVA pension rights, same are vested entirely in his name.

Ms. Daniels argues that the TVA pension is marital property pursuant to T.C.A. 36-4-121(b)(1)(B) and that the Trial Court abused its discretion in failing to award her any portion of the TVA pension that accrued during her husband's twenty year career with TVA. Mr. Daniels argues that the Trial Court specifically found that the division of marital property was equitable. He further argues that his receipt of the unvested pension is based upon a number of future events and that Ms. Daniels has failed to produce any evidence as to the value of the pension, or any evidence that Mr. Daniels will even receive this pension. He further states that any question as to the equitable nature of the distribution falls within the Trial Court's wide discretion in dividing the marital property.

We disagree with Mr. Daniels because of T.C.A. 36-4-121(b)(1)(B), which states:

> "Marital property" includes income from, and any increase in value during the marriage of, property determined to be spearate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation, and the value of vested and unvested pension, vested or unvested stock option rights, retirement or other fringe benefit rights relating to employment that accrued during the period of the marriage.

-4-

In the Order entered by the Trial Court on November 21, 2000, Mr. Daniels's annuity was listed as a marital asset with a value stated thereof, and distributed to Mr. Daniels. Additionally, the Trial Court added the value of the annuity to Mr. Daniels total sum of assets received as a result of the Court's division. There was no mention of the TVA pension in the Order. However, the Trial Court did state in the February 16, 2001 Order denying Ms. Daniels's Motion to Alter or Amend that the pension had been addressed in the property settlement. Mr. Daniel's total sum of assets does not reflect any value of his TVA pension. While Mr. Daniels's pension is contingent upon several factors including but not limited to his retirement from TVA, the pension is a valuable marital asset assuming Mr. Daniels retires from TVA and is eligible to benefit from the retirement.

We find that the TVA pension is a marital asset. Further, we find that it was not divided by the Trial Court in the November 21, 2000 order, and in the event the Trial Court did address it, the Trial Court erred in failing to award Ms. Daniels any portion of the pension. In *Cohen v. Cohen*, 937 S.W.2d 823, 830(Tenn. 1996), the Supreme Court states:

> Further, the difficulty in determining the value of the benefits should not affect the classification of the property. Having held that unvested retirement benefits are marital property under our statute, we discuss briefly principles which may assist trial judges in valuing these benefits. Three helpful observations made by the Court of Appeals in *Kendrick* bear repeating:
> 1. Only the portion of retirement benefits accrued during the marriage are marital property subject to equitable division.
> 2. Retirement benefits accrued during the marriage are marital property subject to equitable division even though the non-employee spouse did not contribute to the increase in their value.
> 3. The value of retirement benefits must be determined at a date as near as possible to the date of the divorce.

Further, *Cohen* specifically directs the Trial Courts as to possible methods of dividing an unvested pension:

> The difficulty in dividing future benefits is aided by the use of elastic, equitable approaches. *See e.g.* 24 Am.Jur.2d Divorce and Separation §§ 948, 949 (1983). Most courts use one of two techniques. *In re Marriage of Brown*, 126 Cal.Rptr. at 638, 544 P.2d at 566; *In re Marriage of Gallo*, 752 P.2d at 54; *Janssen v. Janssen*, 331 N.W.2d at 755. The first approach, known as the present cash value method, requires the trial court to place a present value on the retirement benefit as of the date of the final decree. *Kendrick v. Kendrick*, 902 S.W.2d at 927. To determine the present cash value, the anticipated

number of months the employee spouse will collect the benefits (based on life expectancy) is multiplied by the current retirement benefit payable under the plan. *In re Marriage of Gallo*, 752 P.2d at 54. This gross benefit figure is then discounted to present value allowing for various factors such as mortality, interest, inflation, and any applicable taxes. *Id*. See also *In re Marriage of Grubb*, 745 P.2d at 666; *In re Marriage of Hunt*, 78 Ill.App.3d 653, 34 Ill.Dec. 55, 63, 397 N.E.2d 511, 519 (1979); *Deering v. Deering*, 437 A.2d at 891. Once the present cash value is calculated, the court may award the retirement benefits to the employee-spouse and offset that award by distributing to the other spouse some portion of the marital estate that is equivalent to the spouse's share of the retirement interest. *In re Marriage of Gallo*, 752 P.2d at 54. The present cash value method is preferable if the employee-spouse's retirement benefits can be accurately valued, if retirement is likely to occur in the near future, and if the marital estate includes sufficient assets to offset the award. *Kendrick v. Kendrick*, 902 S.W.2d at 927; *In re Marriage of Gallo*, 752 P.2d at 54.

In other circumstances in which the vesting or maturation is uncertain or in which the retirement benefit is the parties' greatest or only economic asset, courts have used the "deferred distribution" or "retained jurisdiction" method to distribute unvested retirement benefits. This method has distinct advantages when the risk of forfeiture is great. *Kendrick v. Kendrick*, 902 S.W.2d at 927. Under such an approach, it is unnecessary to determine the present value of the retirement benefit. Rather, the court may determine the formula for dividing the monthly benefit at the time of the decree, but delay the actual distribution until the benefits become payable. *In re Marriage of Brown*, 126 Cal.Rptr. at 639, 544 P.2d at 567; *In re Marriage of Gallo*, 752 P.2d at 55; *Deering v. Deering*, 437 A.2d at 891; *Janssen v. Janssen*, 331 N.W.2d at 753. The marital property interest is often expressed as a fraction or a percentage of the employee spouse's monthly benefit. The percentage may be derived by dividing the number of months of the marriage during which the benefits accrued by the total number of months during which the retirement benefits accumulate before being paid. *Kendrick v. Kendrick*, 902 S.W.2d at 927 n. 17. (FN9)

One advantage to the deferred distribution method is that it allows an equitable division without requiring present payment for a benefit not yet realized and potentially never obtained. *In re Marriage of Gallo*, 752 P.2d at 55. Another advantage to the approach is that it equally apportions any risk of forfeiture. While a disadvantage may be that the approach requires a trial court to retain

jurisdiction to oversee the payment, the entry of an order awarding a certain percentage of the benefits at the time of payment should lessen the administrative burden of the court. Courts routinely retain jurisdiction to supervise payments of alimony and child support and have, in the past, successfully divided vested pension rights by awarding each spouse a share. An administrative burden should not excuse an inequitable distribution of marital property.

The choice of valuation method remains within the sound discretion of the trial court to determine after consideration of all relevant factors and circumstances. While the parties are entitled to an equitable division of their marital property, that division need not be mathematically precise. *Kendrick v. Kendrick*, 902 S.W.2d at 929; *Thompson v. Thompson*, 797 S.W.2d 599, 604 (Tenn.App.1990). It must, however, reflect essential fairness in light of the facts of the case. *Kendrick v. Kendrick*, 902 S.W.2d at 929.

*Cohen v. Cohen*, 937 S.W.2d 823, 831-832(Tenn. 1996).

Both the Supreme Court in *Cohen v. Cohen*, 937 S.W.2d 823 (Tenn. 1996) and this Court, in *Kendrick v. Kendrick*, 902 S.W.2d 918 (Tenn. Ct. App. 1994) have addressed this issue. We therefore remand to the Trial Court to choose one of the two aforementioned methods[2] of valuation following the consideration of all relevant factors and circumstances and for an equitable division of Mr. Daniels's TVA pension as set forth in *Cohen v. Cohen*, 937 S.W.2d 823 (Tenn. 1996).

II.

Ms. Daniels appeals the Trial Court's division of the marital assets. Ms. Daniels argues that the division of assets was inequitable in that Mr. Daniels received a larger percentage of the assets than Ms. Daniels. Ms. Daniels received property having a value of $145,605.74 and debt of $11,654.94, leaving her a net estate of $133,950.80. Mr. Daniels was granted assets with a value of $289,182.00 and debt of $129,851.80. As already mentioned, the value of Mr. Daniels net estate is $159,330.20. Ms. Daniels received 45.7% of the marital property and Mr. Daniels received 54.3%.

Because Tennessee is a "dual property" jurisdiction, it is essential that the first order of business is for the Trial Court to classify all the property, give each party their separate property and then divide the marital property. *Batson v. Batson*, 769 S.W.2d 849 (Tenn.Ct. App. 1988). The distinction between the two categories of property is important because only marital property is

---

[2] It may be that more information will be available upon remand to evaluate the value of Mr. Daniels' pension which was not available at the initial hearing.

divided between the parties. T.C.A. 36-4-121(a)(1). A party's separate property is not to be divided. *Brock v. Brock*, 941 S.W.2d 896 (Tenn. Ct. App. 1996).

Marital property is defined in T.C.A. 36-4-121(b)(1)(A) which reads in pertinent part as follows:

> "Marital Property" means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce, except in the case of fraudulent conveyance in anticipation of filing, and including any property to which a right was acquired up to the date of the final divorce hearing, and valued as of a date as near as reasonably possible to the final divorce hearing date.
> . . .

Marital property is further defined at T.C.A. 36-4-121(b)(1)(B)-(D) as follows:

> (B) "Marital Property" includes income from, and any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation, and the value of vested and unvested pension, vested and unvested stock option rights, retirement or other fringe benefit rights relating to employment that accrued during the period of the marriage.
>
> (C) "Marital property" includes recovery in personal injury, workers' compensation, social security disability actions, and other similar actions for the following: wages lost during the marriage, reimbursement for medical bills incurred and paid with marital property, and property damage to marital property.
>
> (D) As used in this subsection, "substantial contribution" may include, but not be limited to, the direct or indirect contribution of a spouse as homemaker, wage earner, parent or family financial manager, together with such other facotrs as the court having jurisdiction thereof may determine.

Separate property is defined at T.C.A. 36-4-121(b)(2) in pertinent part as follows:

> (A) All real and personal property owned by a spouse before marriage; (B) Property acquired in exchange for property acquired before the marriage; (C) Income from and appreciation of property

owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1); (D) Property acquired by a spouse at any time by gift, bequest, devise, or descent;
. . .

Once property is classified as marital, it is to be equitably divided and distributed between the parties. T.C.A. 36-4-121(b)(1). "Trial Courts have wide latitude in fashioning an equitable division of marital property." *Brown v. Brown*, 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994). The standard factors set forth in T.C.A. 36-4-121(c) must be considered. This Court has further stated in *Batson v. Batson*, 769 S.W.2d 849, 859 (Tenn. Ct. App. 1988) the following:

> an equitable property division is not necessarily an equal one. It is not achieved by a mechanical application of the statutory factors, but rather by considering and weighing the most relevant factors in light of the unique facts of the case.

The trial judge's goal is to divide the marital property in an essentially equitable manner. A division is not rendered inequitable simply because it is not precisely equal, or because each party did not receive a share of every piece of marital property. *Kinard v. Kinard*, 986 S.W.2d 220 (Tenn.Ct. App.1998). Appellate Courts are to defer to a Trial Court's division of marital property unless that division is unsupported by a preponderance of the evidence or inconsistent with the statutory factors. *Brown v. Brown*, 913 S.W.2d 163 (Tenn. Ct. App. 1994). Marital fault cannot be considered. T.C.A. 36-4-121(a)(1).

In the case *sub judice*, the Trial Court classified all the property and debt as marital. The Trial Court stated that its reason for giving Mr. Daniels a greater percentage of the marital property was an $85,000.00 gift from Mr. Daniels mother out of his father's estate which was used to purchase the Trotter Farm. The Court did not classify this as a separate asset, but as marital property and stated that it would be "inequitable to grant any substantial interest in this farm to the wife." We find that the property division by the Trial Court is supported by the record and affirm this decision of the Trial Court.

### III.

Ms. Daniels appeals the Trial Court's failure to award her rehabilitative alimony. Ms. Daniels argues that because of the duration of the marriage, which was one of twenty-seven years, the age and physical condition of the parties, the relative earning capacity of the parties, and the standard of living established by the parties, she is entitled to rehabilitative alimony. With respect to her physical condition, Ms. Daniels was diagnosed with breast cancer in 1995. She underwent a lumpectomy, chemotherapy and radiation through May 31, 1996. She is presently cancer free, however, her doctors are currently monitoring another lump. While Ms. Daniels recognizes that fault may be considered in determining alimony, she asserts that it should not be the sole factor in making that decision.

The Trial Court has broad discretion in determining an award of alimony. *Loyd v. Loyd*, 860 S.W.2d 409 (Tenn. Ct. App. 1993). The decision is factually driven and requires a balancing of the factors listed in T.C.A. 36-5-101(d). *Loyd v. Loyd*, 860 S.W.2d 409 (Tenn. Ct. App. 1993). Of these factors, need and the ability to pay are the most critical. *Lancaster v. Lancaster*, 671 S.W.2d 501 (Tenn. Ct. App. 1984). Accordingly, this Court is not inclined to alter a trial court's award of alimony unless it is unsupported by the evidence or is contrary to the public policy embodied in the applicable statutes. *Brown v. Brown*, 913 S.W.2d 163 (Tenn.Ct.App.1994).

In order to address the question of whether Ms. Daniels is entitled to alimony and if so, the nature of that alimony, there must first be a finding that she is "economically disadvantaged" as compared to Mr. Daniels. The Trial Court made no such finding. The statute, T.C.A. 36-5-101(d)(1), sets forth in pertinent part:

> (d)(1) It is the intent of the general assembly that a spouse who is economically disadvantaged, relative to the other spouse, be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance. Where there is such relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors, including those set out in this subsection, then the court may grant an order for payment of support and maintenance on a long-term basis or until the death or remarriage of the recipient except as otherwise provided in subdivision (a)(3). Rehabilitative support and maintenance is a separate class of spousal support as distinguished from alimony in solido and periodic alimony.

In making this determination, the following factors, codified at T.C.A. 36-5-101(d)(1) are to be considered:

> In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:
> (A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
> (B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;
> (C) The duration of the marriage;
> (D) The age and mental condition of each party;

(E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(G) The separate assets of each party, both real and personal, tangible and intangible;

(H) The provisions made with regard to the marital property as defined in § 36-4-121;

(I) The standard of living of the parties established during the marriage;

(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

We find that Ms. Daniels is not economically disadvantaged as compared to Mr. Daniels. Mr. Daniels has a salary of $49,750.00 with overtime pay of approximately $5,000.00 to $10,000.00 a year. Ms. Daniels works full-time for the City of Dayton and part-time for Wal-Mart. Her income is approximately $23,000.00 per year from both jobs. Both Mr. and Ms. Daniels have retirement benefits available through their employer, albeit Mr. Daniels are substantially more than Ms. Daniels. This Court has remanded the issue of Mr. Daniels's pension stating that Ms. Daniels in entitled to an equitable share of that asset. We recognize that this was a marriage of twenty-seven years. We further recognize that Ms. Daniels was diagnosed with breast cancer several years ago. However, there is no evidence in the record that indicates either party has any physical or mental disabilities that prohibit employment. With respect to the standard of living enjoyed by the parties, Ms. Daniels was awarded the marital home, free from debt. The assets awarded to Ms. Daniels totaled $145,605.74 and liabilities of only $11,654.94, leaving her a net estate of $133,950.80. Mr. Daniels, on the other hand, was awarded assets of $289,182.00 with a debt of $129,851.80 to accompany it leaving a net estate of $159,330.20. Mr. and Ms. Daniels have a significant amount of real property and personal property, however, there is also substantial marital debt. Mr. Daniels received approximately 92% of the marital debt. Finally, while the Trial Court did not specifically state that Ms. Daniels was not receiving alimony due to her extra-marital affair, fault is one of the factors the Court may consider. Furthermore, Mr. Daniels was granted the divorce due to Ms. Daniels "inappropriate marital conduct."

Ms. Daniels's Income and Expense Statement introduced at Trial indicates that her monthly net income is $1,439.45[3] and her monthly expenses are $1730.85, leaving a monthly deficit of $291.41. Her monthly expenses include a $200.00 per month allowance toward a new replacement vehicle, yet Ms. Daniels currently drives a 1997 Ford Explorer that is paid for and only 3 years old at the time of Trial. Additionally, Ms. Daniels lists $125.00 per month in long distance charges, $60.00 per month for a cell phone, $80.00 per month for entertainment and $80.00 per month for "other."

Additionally, Mr. Daniels indicates on his Income and Expense Statement that his monthly net income is $2,795.42 plus an additional $450.00 per month in overtime pay for a monthly average of $3245.42. Mr. Daniels listed his monthly expenses as $4,899.92 with a monthly deficit of $1,654.50. However, Mr. Daniels's monthly expenses are no longer exactly as indicated on the income and expense statement as a result of the Trial Court's division. For example, Mr. Daniels listed the full $350.00 monthly payment to First Tennesse Bank of Athens of which he is now only responsible for 75% of that debt. Additionally, Mr. Daniels listed the $21.00 insurance policy his wife has now assumed, as well as $75.00 for insurance on the marital residence and farm. Mr. Daniels also listed $100.00 for entertainment and $80.00 for tobacco products. Removing these monthly expenses from Mr. Daniels responsibility still leaves him at least $1,000.00 per month short. It appears that both parties overstated their monthly expenses.

Based on the aforementioned, we cannot second guess the Trial Court's decision, as there is no "manifest abuse of discretion." *Robertson v. Robertson*, a Supreme Court case filed in Knoxville on April 4, 2002, (Lexis 172).

Finally, Ms. Daniels argues that she is entitled to reasonable attorney's fees at trial as well as on appeal. The award of attorney's fees is a matter of wide discretion for the trial court and absent an abuse of discretion we will not overturn that decision. *Marmino v. Marmino*, 238 S.W.2d 105 (Tenn. Ct. App. 1950). We conclude the Trial Court acted within its discretion in failing to award attorney's fees.

With respect to Ms. Daniels's request for attorney's fees on appeal, an award of attorney's fees to either party is not appropriate when both parties have been partially successful in their appeal. *Baggett v. Baggett*, 512 S.W.2d 292, (Tenn.App.1973). We, therefore, decline to award Ms. Daniels attorney's fees on appeal.

For the foregoing reasons the judgment of the Trial Court is affirmed in part and reversed in part. This cause is remanded to the Trial Court for such proceedings as may be necessary and for the collection of costs below. Costs of appeal are adjudged equally against the Appellant, Mary Freels Daniels, and her surety, and the Appellee, Curtis Michael Daniels.

---

[3]This includes her income from her employment with the City of Dayton as well as her part-time job at Wal-Mart.

_____

HOUSTON M. GODDARD, PRESIDING JUDGE